In re FOUNDATION FOR NEW ERA PHILANTHROPY, Debtor.

Arlin M. ADAMS, Trustee for Foundation for New Era Philanthropy, Plaintiff,

v.

PRUDENTIAL SECURITIES, INC., Defendant and Third–Party Plaintiff,

v.

John G. BENNETT, Jr., Third–Party Defendant.

PRUDENTIAL SECURITIES, INC., Third–Party Plaintiff,

v.

DARTMOUTH COLLEGE, Princeton University, University of Pennsylvania, Amelior Charitable Fund, Balch Institute, Brandywine YMCA, Chattanooga Christian School, Citivision, Conservative Baptist Foreign Mission Society (CB International), Detroit Institute of Arts, English Language Institute of China, Ephrata Community Hospital Foundation, Focus, Frankford Hospital, Freedom Baptists Schools, Fuller Foundation, Gordon College, Gordon–Conwell Theological Seminary, Heal the World Foundation, J.S. Herr Foundation, Jesus Film Project, The Johnson Foundation, King College, Laity Lodge Foundation, Lan–Chester Christian School, Lancaster Christian School, Leadership Network, Maranantha Endowment Fund, The Mariposa Foundation, Mission Aviation Fellowship, Modglin Family Foundation, National Constitution Center, National Coalition Against Pornography, P.R.O. Missions, Peace Valley Church, Pennsylvania Academy of Fine Arts, Presbyterian Children's Village, Sim, U.S.A., Spring Arbor College, United World Mission, Third–Party Defendants.

Bankruptcy No. 95–13729F.

Adversary No. 96–0828.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 15, 1996.

Kenneth E. Aaron, Stuart M. Brown, Buchanan Ingersoll P.C., Philadelphia, PA.

James J. Rodgers, Dilworth, Paxson, Kalish & Kauffman L.L.P., Philadelphia, PA.

Alan R. Gordon, Michael R. Lastowski, William J. Burnett, Saul, Ewing, Remick & Saul, Philadelphia, PA.

Henry J. Sommer, Eric L. Frank, Miller, Frank & Miller, Philadelphia, PA.

C. Hall Swaim, Thomas N. O'Connor, Hale and Dorr, Boston, MA.

John Francis Gough, W. Jeffrey Garson, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA.

Morton R. Branzburg, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge.

On June 26, 1996, the chapter 7 trustee, Arlin M. Adams, filed an adversary proceeding against defendant Prudential Securities, Inc. ("PSI"). While the complaint asserts thirty-four claims against PSI, the claims are quite similar for the most part.

The trustee contends that PSI received numerous "fraudulent conveyances" within the provisions of 11 U.S.C. § 548(a)(1) over a period of approximately one year, when it received transfers of funds from the debtor which were treated by PSI as repayment of margin loans made to the debtor. As the basis for these fraudulent conveyance claims, the trustee maintains that by July 25, 1994, PSI knew, should have known, or had a reasonable basis to suspect that the debtor was operating a pyramid scheme and misrepresenting the nature of its commercial relationship with PSI to third parties. The trustee alleges that PSI acted improperly or failed to act properly in order to continue earning "excessive" profits on interest and commissions from its transactions with the debtor.

The trustee seeks the recovery of all sums paid to PSI by the debtor during a certain period as fraudulent. He also asserts in his complaint that PSI received certain preferential transfers that are avoidable. Further, he alleges that the original loan transfers from PSI to the debtor were fraudulent and thus avoidable. As trustee's counsel explained at oral argument, the trustee seeks to achieve a litigation result in this proceeding whereby PSI returns all funds paid to it by the debtor but would not hold any claim for prepetition loans made to the debtor which, due to the trustee's avoidance litigation, go unpaid. Alternatively, the trustee asserts in his complaint that all claims which PSI may hold as a result of unpaid loans should be subordinated to the claims of other creditors.

PSI filed a timely answer to this complaint on July 29, 1996. In its answer, it disputes certain of the trustee's factual assertions and raises numerous defenses to the relief sought. PSI contends that it neither knew nor should it have known of any fraudulent activities of the debtor. Indeed, PSI maintains that it too was duped by the debtor. It denies making "excessive" profits from its transactions with the debtor. Further, it argues that various third parties, not PSI, were the beneficiaries of the debtor's misconduct. Thus, PSI asserts that it simply made loans to the debtor, which were secured by the debtor's property, and which were properly repaid.

Since all loans made by PSI to the debtor were repaid in full, PSI has filed no proof of claim in this chapter 7 bankruptcy. However, on August 8, 1996, in response to the complaint of the trustee, PSI filed two third-party complaints which are the subject of the instant dispute.

The first is directed against John G. Bennett, Jr., who was the founder of the debtor and its former president and chief executive officer. PSI alleges that this third-party defendant made repeated misrepresentations and false statements to PSI's employees in order to hide his operation of a pyramid scheme. PSI contends that, to the extent the trustee succeeds in recovering the payment of loan proceeds made to PSI, PSI relied upon these material misrepresentations made by Mr. Bennett to its detriment. As a result, it asserts:

> If the trustee were to recover the loan repayments he seeks to recover from PSI, then Bennett would be liable to PSI because he defrauded PSI into making the loans to New Era.

Third–Party Complaint, ¶ 21.

This third-party complaint also contends that bankruptcy court subject matter jurisdiction exists over PSI's third-party claim against Mr. Bennett both by virtue of 28

U.S.C. § 1334, because the third-party claim "relates" to the New Era bankruptcy case, and by virtue of 28 U.S.C. § 1367 (supplemental jurisdiction) even if the third-party claim is not related to the New Era bankruptcy case. The complaint further states that this third-party proceeding is non-core. ¶ 4. *See* Fed.R.Bankr.P. 7008(a).[1]

The second third-party complaint was also filed by PSI on August 8, 1996. This complaint is against thirty-nine entities whom PSI contends received "the proceeds which PSI was defrauded into providing to New Era." Third–Party Complaint, at 2.[2] PSI alleges:

> If the Trustee were to recover the amounts he seeks to recover from PSI, the proceeds of the margin loans the Debtor defrauded PSI into making would not rightfully belong to the third-party defendants, and the third-party defendants, as recipients of the loan proceeds, would be unjustly enriched at the expense of PSI.

> An injustice would result if the recipients of the proceeds of the fraud against PSI were not required to return those proceeds to PSI, and the unjust enrichment realized by the third-party defendants would violate fundamental principles of justice, equity, and good conscience.

Third–Party Complaint, ¶¶ 18, 19. As relief, PSI requests that various third-party defendants be held liable to it for the proceeds of margin loans made by PSI to the debtor which were received by these third-party defendants, but only to the extent that PSI is liable to the trustee to return those loan repayments already received from the debtor.

Again, this third-party complaint asserts that these claims by PSI are non-core claims related to the New Era bankruptcy case and that bankruptcy court subject matter jurisdiction exists by virtue of 28 U.S.C. §§ 1334 and 1367. Third–Party Complaint, ¶ 4.

## I.

### A.

The chapter 7 trustee has filed a motion seeking to strike the two third-party complaints as violative of Fed.R.Bankr.P. 7014, which incorporates Fed.R.Civ.P. 14. Alternatively, he seeks to sever these two third party actions from the main proceeding. Third-party defendant John G. Bennett was present at the hearing held on this motion, through counsel, and took no position on the trustee's motion. Various other third-party defendants appeared through counsel and generally agreed with the trustee's request, although some prefer that the third-party litigation involving the alleged loan proceed recipients be "stayed" pending the outcome of the main proceeding, as opposed to "severed."

PSI opposes the trustee's motion by arguing that its two third-party complaints are properly filed within the limitations posed by Rule 14. It maintains that the contentions of the trustee and the supporting third-party defendants in seeking to strike its third-party complaints raise issues regarding the validity of the third-party claims, which issues should be considered only in the context of a motion to dismiss under Fed.R.Bankr.P. 7012, and not in the context of a motion to strike. In addition, PSI asserts that all issues regarding trial procedure should be deferred until trial is near; however, PSI also suggests that discovery on the third-party complaints will be directed to facts germane to the trustee's claims against it and so should proceed along with discovery on trustee's claims.

Before I may determine the trustee's motion, it is essential that I have the power to hear these third-party complaints. Toward that end, I requested that all parties address whether I have subject matter jurisdiction over the third-party complaints. *Accord, e.g., Liberty Mut. Ins. Co. v. Ward Trucking Corp.,* 48 F.3d 742, 750 (3d Cir.1995) (federal courts should raise, even *sua sponte,* jurisdic-

---

1. The third party complaint does not, however, state whether PSI "does or does not consent to entry of final orders of judgment by the bankruptcy judge." Fed.R.Bankr.P. 7008(a).

2. Although the caption of this third-party complaint appears to list forty third-party defendants, in their memoranda the parties refer to thirty-nine such defendants. I will do so as well.

tional issues); *In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir.1989) (same). They have done so, by way of memoranda and argument.[3]

PSI and one of the third-party defendants (Presbyterian Childrens Village) maintain that jurisdiction over both third-party complaints exists under 28 U.S.C. § 1334 (although very different reasons are advanced by these two entities). Alternatively, PSI argues that "supplemental jurisdiction" should be exercised under 28 U.S.C. § 1367. The trustee and all other parties argue that both third-party complaints fall outside this court's subject matter jurisdiction.

■ It is appropriate to first address the scope of my power to determine these two complaints; the resolution of the jurisdictional question could render moot the trustee's motion. In resolving this issue, I note that, in general, a federal court—including a bankruptcy court—must dismiss a civil action for lack of subject matter jurisdiction unless the plaintiff affirmatively demonstrates that jurisdiction exists. *In re Almarc Corp.*, 94 B.R. 361, 363 (Bankr.E.D.Pa.1988); *accord, e.g., In re General American Communications Corp.*, 130 B.R. 136, 152–153 (S.D.N.Y.1991); *In re Radco Merchandising Services, Inc.*, 111 B.R. 684, 686 (N.D.Ill.1990); *see generally Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487 (D.C.Cir.1984). "'The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence.'" *In re Almarc Corp.*, 94 B.R. at 363, *quoting Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805 (3d Cir.1981). Therefore, the burden affirmatively falls upon PSI to establish my jurisdiction over each of these third-party complaints.

**B.**

As I noted in *In re Reed*, 94 B.R. 48, 51 (E.D.Pa.1988) (recommendation accepted):

bankruptcy proceedings may now be grouped into three categories:

(1) core proceedings, which may be heard and resolved by the bankruptcy court, *see* 28 U.S.C. § 157(b)(1); (2) non-core, related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions to the district court, *see* U.S.C. § 157(c)(1); (3) non-core, unrelated proceedings, over which the bankruptcy court lacks any jurisdiction.

*Accord In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 969 (Bankr.E.D.Pa.1988); *In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr.W.D.Ky.1985).

The outmost parameter of bankruptcy jurisdiction is defined by the concept of a related or non-core proceeding; that concept, in turn, has been explicated by the Third Circuit Court of Appeals:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original) (citations omitted).

In considering into which of the three possible jurisdictional categories I should classify these third-party claims, I note that PSI agreed at the hearing held on these motions that it raises no theory of recovery from the third-party defendants that is independent of the trustee's recovery against it. In other words, PSI acknowledges that unless it is liable to the trustee the third-party defendants cannot be liable to it. If PSI is found

---

**3.** I raised this jurisdictional issue *sua sponte* because, "[a]s several courts have observed, 'a vast majority of cases find that 'related to' jurisdiction is lacking in connection with third-party complaints.'" *Matter of Walker*, 51 F.3d 562, 569 (5th Cir.1995) (quoting *In re Summit Airlines*, 160 B.R. 911, 922 (Bankr.E.D.Pa.1993)).

partially liable, then, at most, the third party defendants may be found partially liable to it.

Further, PSI conceded that it raises no issue about its financial ability to satisfy any judgment which may be rendered against it in favor of the chapter 7 trustee. In other words, PSI's ability to satisfy any judgment rendered in this adversary proceeding is not dependent upon its ability to recover from the third-party defendants. These two concessions will affect my analysis of the jurisdictional question.

## C.

At the outset, I shall address the question whether these are core or non-core proceedings.

■ With but one exception, all parties, including PSI and the trustee, agree that both third-party complaints are non-core proceedings. Usually, for purposes of determining subject matter jurisdiction, the classification issue of core versus non-core is immaterial. So long as the proceeding is "related" to the bankruptcy case, the categorization of core or non-core only affects a bankruptcy court's power to enter a final judgment without the consent of the parties. It does not affect the bankruptcy court's power to hear the dispute. *See Matter of Walker*, 51 F.3d at 568–69; *Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987); *In re Reed*, 94 B.R. at 51. Thus, the only relevant question in determining a bankruptcy court's jurisdiction is whether the proceeding is at least a "related" proceeding. If so, then jurisdiction exists. If not, then the proceeding must be dismissed. *See Matter of Walker*, 51 F.3d at 568–69.

■ However, one third-party defendant, Presbyterian Childrens Village, contends that the third-party complaint against the thirty-nine entities is a "core" proceeding. It argues that the relief sought by PSI attempts to undo the transfer avoidance provisions of the Bankruptcy Code by

reallocat[ing] ultimate responsibility for recovery under the bankruptcy avoiding powers to other creditors of the debtor and prepetition transferees of property of the debtor. It is in essence, an attempt to rewrite section 550 of the Code, which states exactly what property can be recovered and from whom, as well as all of the avoiding power provisions upon which the trustee relies, which specify those transfers that can be avoided for the benefit of all creditors and, implicitly, those which cannot.

Presbyterian's Memorandum, at 4.

In short, Presbyterian argues that state law (including state common law), upon which PSI relies, cannot allow PSI to recover from any third-party defendants to the extent that the trustee avoids transfers under sections 547 or 548 of the Code and obtains from PSI the value of such avoided transfers pursuant to section 550. To the extent state law would permit such a recovery from third parties, Presbyterian believes it would conflict with federal bankruptcy law and thereby violate the Supremacy Clause of the United States Constitution. Indeed, Presbyterian even refers to *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) which is the leading case involving the Supremacy Clause and federal bankruptcy laws. Further, this third-party defendant reasons that any dispute which could test the validity of state law against a provision of the Bankruptcy Code must "arise under" the Bankruptcy Code and thereby be classified as a "core" proceeding.

I find this classification argument unpersuasive for the following reasons.

Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer to render a final determination of its merits. *See* L. King, 1 *Collier on Bankruptcy*, ¶ 3.01[2][iii] (15th ed. 1996); Norton, *Norton Bankruptcy Law and Practice 2d*, § 4.21 at 4–137 (1994) ("The word 'core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law"). Core proceedings thus represent a subset of related pro-

ceedings, in that they "arise under" or "arise in" the bankruptcy case.

As the Third Circuit Court of Appeals has explained,

a "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

*In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 267 (3d Cir.1991) (quoting *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990) which, in turn, quoted *Matter of Wood,* 825 F.2d at 97).[4]

The claims asserted by PSI in both third-party complaints arise under state common law, not federal bankruptcy law. If the third-party defendants have any liability to PSI, such liability exists because state law so directs. Further, if this state law liability exists, PSI was free to assert these claims in any non-bankruptcy forum with the jurisdiction (both subject matter and personal) to hear the dispute. Therefore, the third-party claims neither involve a substantive right provided by Title 11, nor need they only arise in this bankruptcy case. *See, e.g., In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1178–80 (3d Cir.1996).

This conclusion does not change because Presbyterian believes that the Supremacy Clause is implicated in these proceedings. Even if I assume *arguendo* that the ability of a defendant in an avoidance dispute to utilize state law to seek indemnity or contribution from a third-party, who may also be a creditor of the debtor,[5] could conflict with federal bankruptcy law, the existence of Supremacy Clause issues does not render such a controversy a core matter. On the contrary, Supremacy Clause disputes fall within traditional federal question jurisdiction under 28 U.S.C. § 1331, *accord, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Freehold Cogeneration Associates, L.P. v. Board of Regulatory Commissioners,* 44 F.3d 1178, 1185 (3d Cir.1995), and so may be heard by non-bankruptcy *fora* outside the context of a bankruptcy case. The substantive right invoked is constitutional rather than one arising from the Bankruptcy Code. *See Perez v. Campbell.*

Finally, Presbyterian's analysis is unpersuasive because it implies that a proceeding may be classified as core even if its outcome would have no conceivable effect upon the administration of a bankruptcy case. I am aware of no decision which so holds. On the contrary, the notion that a core proceeding must be related to a bankruptcy case has been understood:

It is apparent that the core and noncore concepts embodied in the 1984 Act envision that noncore related proceedings are to some extent removed from core proceedings, the latter being the heart of the bankruptcy matter. The terms them-

---

4. The two components of the above-quoted definition are just articulations of the statutory concepts of "arising under" and "arising in" found in 28 U.S.C. §§ 157(b), 1334(b). *E.g., In re Alpha Steel Co., Inc.,* 142 B.R. 465, 468 nn. 1 & 2 (M.D.Ala.1992).

5. It is not unusual for a lender to loan funds to a corporation and obtain a guarantee or suretyship agreement from the corporation's principal. *See generally, e.g., Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186 (7th Cir.1989); *Matter of Romar Intern. Georgia, Inc.,* 198 B.R. 401 (Bankr.M.D.Ga.1996). If the corporation files for bankruptcy and then avoids certain loan payments made to the lender as preferential, the lender, in turn, will seek to recover all returned payments from the third-party guarantor. It is not intuitive that the recovery from the guarantor should be in violation of the Supremacy Clause, even if the guarantor also happens to be a creditor of the corporation (which will always be the

case, given that a creditor is defined as one holding a contingent right to payment. *See, e.g., In re Marilyn Steinberg Enterprises, Inc.,* 141 B.R. 587, 593 (Bankr.E.D.Pa.1992)). Indeed, the guarantee was taken in the first instance to protect the lender if the principal obligor defaulted and filed for bankruptcy protection. *Mellon Bank v. Siegel,* 96 B.R. 505, 506 (E.D.Pa.), *appeal dismissed without op.,* 884 F.2d 1385 (3d Cir.1989).

Presbyterian suggests that one who has received an avoidable transfer cannot seek to be made whole from a third-party based upon state law, if that third-party happens to hold a claim against the bankruptcy estate. Without now deciding that issue, I note that attempts at such recoveries are not at all rare given the frequency of loan guarantees, yet I am aware of no reported decision which supports this suggestion; nor does Presbyterian refer to any reported decision for support.

selves, as well as the fact that bankruptcy judges may enter final orders only in core proceedings, make this self-evident.... Accordingly, a proceeding that is not a related proceeding *a fortiori* cannot be a core proceeding.

*In re Central Ice Cream Co.*, 82 B.R. 933, 936 (N.D.Ill.1987).

Indeed, not only must a core proceeding be related to a bankruptcy case, but disputes which might otherwise fall squarely within the examples of core matters found in 28 U.S.C. § 157(b)(2)—*e.g.*, proof of claim litigation—have been found outside bankruptcy court jurisdiction—*i.e.*, to be unrelated matters—when their outcome would not affect the bankruptcy estate. *See, e.g., Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991) (request by the chapter 11 debtor to enjoin a tort suit against it after confirmation was outside bankruptcy jurisdiction as such relief was not necessary for the consummation of the plan); *In re Haws*, 158 B.R. 965, 971 (Bankr.S.D.Tex.1993) (despite section 541 of the Code, an adversary proceeding brought by the chapter 11 trustee postconfirmation was dismissed as outside bankruptcy jurisdiction because any damages the trustee would recover would not be distributed to creditors under the terms of the confirmed plan); *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 110 B.R. 173, 184 (Bankr.E.D.Pa.1990) (Scholl, B.J.) (adversary proceeding seeking an interpretation of a confirmed chapter 11 plan was dismissed due to lack of jurisdiction, even though 11 U.S.C. § 1142 grants the bankruptcy court power over disputes regarding the implementation of a confirmed plan, because its outcome would not affect the debtor's reorganization); *In re Malone*, 74 B.R. 315 (Bankr.E.D.Pa.

1987), *recommendation approved,* 82 B.R. 346 (E.D.Pa.1988) (Fullam, D.J.) (proof of claim litigation could not be resolved by the bankruptcy court because it would have no conceivable effect upon the estate).

Accordingly, if one assumes that the relief sought by PSI against the third-party defendants would be permissible under state law but conflict with federal bankruptcy law, such a conflict does not render the proceeding a "core proceeding" subject to bankruptcy court jurisdiction. Moreover, the dispute must be resolved by a non-bankruptcy forum unless its outcome is "related" in some manner to the underlying bankruptcy case.

Thus, I turn to whether the third-party complaints are indeed related proceedings.

## II.

■ "[A] bankruptcy court's 'related to' jurisdiction is not limitless." *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). As just mentioned, the Third Circuit Court of Appeals has instructed in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) that the outer boundary of bankruptcy court jurisdiction is defined by those disputes whose outcomes "could conceivably have any effect on the estate being administered in bankruptcy." *Accord, e.g., In re Guild and Gallery Plus, Inc.*, 72 F.3d at 1181; *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990). Thus, if the outcome of a dispute could not have any effect on the bankruptcy case—*e.g.*, by affecting the property to be administered, the total assets to be distributed or the total claims to be paid—then a bankruptcy court may not hear the dispute.[6]

6. Recently, the Supreme Court in *Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, discussed the concept of a "related" proceeding in the following terms:

Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate....

In attempting to strike an appropriate balance, the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), devised the following test for determining the existence of "related to" jurisdiction: [quoting language at 743 F.2d at 994].

The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the Pacor test with little or no variation.... The Second and Seventh Circuits, on the other hand, seem to have adopted a slightly different test.... But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.

*Id.*, at —— n. 6, 115 S.Ct. at 1499 n. 6.

While the Court found it unnecessary to officially endorse the *Pacor* definition of a "related proceeding"—however, it also did not disapprove of it—it recognized that proceedings which have no effect upon the debtor or the administra-

Since jurisdiction is dependent upon the effect, if any, that a particular proceeding may have upon a given bankruptcy case, it is not surprising that similar types of disputes may have an effect in one bankruptcy case but not in a different case. The most common examples of this principle arise in disputes between creditors. Sometimes disputes between creditors may conceivably have an impact upon a bankruptcy proceeding; if so, then there is jurisdiction in the bankruptcy court to decide them. *See, e.g., In re M. Paolella & Sons, Inc.; see generally Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987). Other times, the outcome of the dispute will affect only the rights of the creditors *inter se* without making any difference in the bankruptcy case itself. *See, e.g., Matter of Walker*, 51 F.3d at 569; *In re Fietz*, 852 F.2d 455 (9th Cir.1988); *Matter of Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Pettibone Corp.*, 135 B.R. 847 (Bankr.N.D.Ill. 1992); *In re Haug*, 19 B.R. 223 (Bankr.D.Or. 1982). When one considers, for example, the nature of the bankruptcy filing—*i.e.*, chapter 7 versus chapter 11—and the assets available for distribution, the same type of dispute may fall within the jurisdictional boundary in one bankruptcy case but not in another.

For instance, the relative priority of liens may be of significance in a chapter 7 case where the collateral is being liquidated. However, if the collateral were not to be administered by the chapter 7 trustee (usually because there is no equity in the property), then the relative position of the lien creditors may make no difference to the administration of that bankruptcy case. The priority question will matter greatly to the creditors upon foreclosure, but that dispute can and must be resolved in a non-bankruptcy forum when it arises. *See Matter of Xonics, Inc.*

Usually, disputes between a creditor and a debtor fall within bankruptcy jurisdiction, but not always. For instance, in a no-asset chapter 7 case—which means that no assets will be distributed to unsecured creditors— generally there is no reason to hear a challenge to an unsecured proof of claim, since the size of the claim is irrelevant. *See also*

*In re Bumann*, 147 B.R. 44, 45 (Bankr. D.N.D.1992) (court declines to fix amount of claim in a dischargeability proceeding). Similarly, in a chapter 11 case, when the debtor has confirmed a plan of reorganization which clearly will provide for no distribution to unsecured creditors, an outstanding objection to an unsecured proof of claim has no impact whatever on the bankruptcy case and falls outside court jurisdiction. *In re Malone*, 74 B.R. at 321.

Third-party complaints which involve the debtor or bankruptcy trustee, either as a third-party plaintiff or third-party defendant, will often have an effect upon the administration of a bankruptcy case because the outcome could affect the size of the estate (if the trustee succeeds as a third-party plaintiff) or could affect the amount of claims asserted against the estate (if the trustee does not prevail as a third-party defendant). Such a potential increase in estate property or potential increase in liabilities of the estate is sufficient to confer subject matter jurisdiction over a bankruptcy proceeding. *See, e.g., Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 385 (3d Cir.1987) ("enforcement of the Commission's citations against [the debtor] will undoubtedly alter its liabilities and have an impact on the administration of the debtor's estate").

Conversely, third-party claims which do not involve the debtor or the bankruptcy trustee as parties will usually not have any impact upon the administration of the underlying bankruptcy case, unless the subject of the dispute is estate property. *Matter of Zale Corp.*, 62 F.3d 746, 753 (5th Cir.1995); *accord Matter of Walker*, 51 F.3d at 569. Whether or not the third-party plaintiff obtains contribution or indemnity from the third-party defendants (and thereby is made whole) has no effect on the bankruptcy estate. As summarized by the Fifth Circuit:

> Those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the

tion of the debtor's case are outside the scope of bankruptcy jurisdiction.

third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create "related to" jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action "related to" the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit.

*Matter of Zale Corp.*, 62 F.3d at 753–54 (footnotes omitted) (citations omitted); *see, e.g., In re Guild and Gallery Plus, Inc.*, 72 F.3d at 1181.

■ Specifically, in this dispute, the trustee is suing PSI to recover funds PSI received from the debtor. PSI concedes that if the trustee prevails, he will be able to recover any judgment entered from PSI. Such a recovery from PSI would benefit the debtor's estate and thus is related to the underlying bankruptcy case. *See, e.g., Barnett v. Stern,* 909 F.2d 973 (7th Cir.1990).[7] PSI, in turn, is seeking indemnity from the third-party defendants.[8] PSI maintains that if it is liable to the trustee, the third-party defendants are fully liable to it. However, the third-party litigation does not involve an asset of the estate. Furthermore, whether PSI is able to prevail and recover from third-party defendants matters greatly to PSI and those third-party defendants, but is irrelevant to the trustee. The outcome of the third-party complaints will affect the net worth of the parties to those claims. But PSI's success or failure as third-party plaintiff will not enhance the funds in the bankruptcy estate available for distribution by the chapter 7 trustee. Any recovery under these third-

party claims would inure solely to PSI's benefit. (Nor, as will be discussed, would it alter the claims asserted against the estate.)

This analysis is consistent with that reached by many other courts: that indemnity or contribution claims made by those who are sued by representatives of the bankruptcy estate against third parties generally fall outside the scope of bankruptcy court jurisdiction. *E.g. Matter of Walker; Matter of Schwamb,* 169 B.R. 601, 604 (E.D.La.1994), *affirmed without op.,* 48 F.3d 530 (5th Cir.), *cert. denied sub nom. Delta Airlines, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995); *In re Spaulding & Co.,* 131 B.R. 84, 88 (N.D.Ill.1990); *In re Remington Development Group, Inc.,* 180 B.R. 365 (Bankr. D.R.I.1995); *In re Summit Airlines, Inc.; In re Pettibone Corp.,* 135 B.R. at 850 ("Bankruptcy Judges frequently lack 'related to' jurisdiction to hear third-party complaints which arise from Adversary proceedings"); *In re K & R Mining, Inc.,* 135 B.R. 269 (Bankr.N.D.Ohio 1991) (holding that there was no bankruptcy subject matter jurisdiction over a cross-claim); *In re Blava In-Line, Inc.,* 133 B.R. 33 (Bankr.S.D.N.Y.1991); *In re German,* 97 B.R. 373, 375 (Bankr. S.D.Ohio 1989); *In re Kaiser Steel Corp.,* 95 B.R. 782, 791 (Bankr.D.Colo.), *aff'd on other gnds,* 109 B.R. 968 (D.Colo.1989); *In re Maislin Industries, U.S., Inc.,* 75 B.R. 170, 172 (Bankr.E.D.Mich.1987); *In re John Peterson Motors, Inc.,* 56 B.R. 588, 591 (Bankr. D.Minn.1986); *see also In re Fietz,* 852 F.2d at 458; *In re Houghton,* 164 B.R. 146 (Bankr.W.D.Wash.1994). *Compare In re Leco Enterprises, Inc.,* 144 B.R. 244, 247, 250 (S.D.N.Y.1992) (third party complaint was related because the bankruptcy estate would, by agreement, recover a percentage of all sums recovered by the third party plaintiff).[9]

---

**7.** Given that the trustee's claims are based upon Bankruptcy Code provisions, these claims are also core matters.

**8.** Indemnification differs from contribution. As explained by the Third Circuit:

Indemnification and contribution differ in the extent to which a tortfeasor is able to rid himself of liability. Where the entire liability shifts, indemnification is invoked; on the other

hand, where liability is shifted only proportionately, contribution exists instead.

*De Laval Turbine, Inc. v. West India Industries, Inc.,* 502 F.2d 259, 271 n. 17 (3d Cir.1974).

**9.** While virtually all the third-party defendants argue that the claims for unjust enrichment raised in the third party complaint fall outside the subject matter jurisdiction of this court, the trustee also argues that any such claim belongs to the estate and cannot be raised by PSI. It is

While PSI appears to concede that its third-party claims neither involve estate property nor would increase or decrease the assets which comprise the bankruptcy estate, it maintains nonetheless that the outcome of the third-party litigation would affect the claims asserted against the estate and thus affect the administration of the case. *See generally In re Salem Mills, Inc.*, 148 B.R. 505 (Bankr.N.D.Ill.1992) (a third-party claim was related to a bankruptcy case because its outcome would increase the amount of claims asserted against the estate).[10] As explained by PSI in its memorandum:

> PSI's third-party claims not only arise out [sic] the very loan transactions the Trustee seeks to reverse in his complaint, but also are legally dependent on the Trustee's underlying claims in that PSI's recovery on the third-party claims is contingent on recovery by the Trustee on his claims against PSI. Moreover, recovery by PSI on its third-party claims will both reduce the amount of claims PSI would otherwise have in this bankruptcy case as a result of any recovery by the Trustee against PSI and increase the claims in the hands of the third-party defendants (or their donors), thus affecting the administration of the estate and the arrangement of the debtor's creditors. Under these circumstances, the third-party claims are "related to" the bankruptcy case, and this Court has jurisdiction over those claims pursuant to the bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b).

PSI's Memorandum at 4.

PSI's contention—that the third-party complaints could conceivably reduce its able claim against the estate by way of third-party litigation, the Court of Appeals concluded that there was an insufficient nexus between the original litigation and the debtor's estate.

If one were analyzing bankruptcy "related to" jurisdiction based solely upon the result in *Pacor*, one might conclude that third-party litigation which may give rise to contested claims against the estate would be outside the jurisdiction of the bankruptcy court unless it were clear that such claims would be allowable. For example, the Bankruptcy Court in *Salem Mills* interpreted the *Pacor* holding as requiring the third-party defendant to have filed a formal proof of claim before any third-party indemnity action not involving the debtor or bankruptcy trustee as a party would be "related to" the bankruptcy case. 148 B.R. at 509, 510 n. 9.

However, decisions in the Third Circuit since *Pacor*, particularly *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 264–65, suggest that " 'automatic' liability is not a prerequisite for a finding of 'related to' jurisdiction." *In re Dow Corning Corp.*, 86 F.3d at 491. Therefore, I will accept PSI's implicit premise that litigation which could potentially increase the amount of claims against the estate is "related to" the bankruptcy case, even if those claims have not yet been filed and even if there is no assurance (*e.g.*, contractual right) that those claims would be allowed. *See, e.g., In re G.S.F. Corp.*, 938 F.2d 1467, 1475–76 (1st Cir.1991) (potential claim by third-party defendant against the estate was sufficient to render the third-party litigation "related to" the bankruptcy case). *But see, e.g., In re VideOcart, Inc.*, 165 B.R. 740, 744 (Bankr.D.Mass.1994) (the third-party litigation was "only a precursor to the potential contribution claim ... [of the third-party defendant] and is too tenuous and speculative an event at this point in time to confer "related to" jurisdiction").

---

true that if a claim belongs to the estate, only a trustee—not an individual creditor—(and the contingent claim held by PSI renders it a creditor) would have standing to assert that claim during the pendency of a bankruptcy case. *See Matter of Educators Group Health Trust*, 25 F.3d 1281, 1283–84 (5th Cir.1994); *John L. Motley Associates, Inc. v. Rumbaugh*, 104 B.R. 683, 687–88 (E.D.Pa.1989). However, given my analysis of the scope of "related to" jurisdiction involving third-party complaints, I need not consider the issue of the standing of the third-party plaintiff in these proceedings.

**10.** As will be discussed below, it is at present uncertain whether the results of the trustee's litigation against PSI will result in any additional claims asserted against the bankruptcy estate. One might construe the actual holding of *Pacor, Inc. v. Higgins* to restrict "related to" bankruptcy court jurisdiction to those third-party actions which will "automatically" increase the amount of liabilities owed by the estate. *In re Dow Corning Corp.*, 86 F.3d 482, 491 (6th Cir.), *petition for cert. filed*, 65 USLW 3167 (Aug. 28, 1996).

Recall that in *Pacor* the question was whether a lawsuit between two non-debtor parties was related to the bankruptcy case of the third-party defendant. If the original plaintiff prevailed, the defendant was asserting a claim against the debtor for indemnity or contribution. Therefore, the non-debtor litigation could result in the assertion of an additional claim against the debtor, depending upon its outcome. Nonetheless, the Third Circuit concluded that no bankruptcy jurisdiction existed over that litigation because the debtor would be free to challenge any claim ultimately raised by the third-party plaintiff. Since the success of the plaintiff in the original action would not necessarily result in an allow-

claims against the estate and increase the claims of third-party defendants—is based upon section 502(h) of the Bankruptcy Code.

As noted earlier, PSI has filed no proof of claim in this bankruptcy case. To the extent it loaned money to the debtor, it was fully repaid prior to the debtor's bankruptcy filing. However, were the trustee to avoid certain transfers of property made to PSI and recover the property transferred or its value, then PSI would no longer have been repaid in full. In that circumstance, PSI would have a claim against the estate by virtue of 11 U.S.C. § 502(h) and Fed.R.Bankr.P. 3002(c)(3). *See generally In re Telesphere Communications, Inc.,* 179 B.R. 544, 553 (Bankr.N.D.Ill.1994) ("Avoidance of a preference results in a return of transferred property to the estate, but may also result in the defendant asserting a claim that otherwise would have been satisfied by the transferred property"); *In re Allied Companies, Inc.,* 155 B.R. 739, 744 (Bankr.S.D.Ind.1992) ("[A]lthough a creditor did not have a claim at the time of bankruptcy because its claim had been satisfied by a preferential payment, subsequent avoidance of the payment relates back to the time before bankruptcy, so the claim is deemed to have been unpaid at the time the petition was filed"); *In re Jenkins Landscaping & Excavating, Inc.,* 93 B.R. 84 (W.D.Va.1988); L. King, 8 *Collier on Bankruptcy,* ¶ 302.05[4] (15th ed. 1996).

In this instance, the trustee is attempting (utilizing different Bankruptcy Code provisions) to avoid various transfers of loan payments made by the debtor to PSI. While PSI does not concede that the transfers are avoidable, it maintains that should avoidance be ordered, PSI would assert a claim under section 502(h) for all loan payments it disgorges to the bankruptcy trustee.[11] Rather than simply seeking a distribution from the estate on its claims, these two third-party complaints represent PSI's efforts to recover from the third-party defendants (based upon non-bankruptcy law theories of recovery) all sums which may be paid to the trustee.

The trustee's counsel orally argued that the trustee will assert that PSI should not be allowed any claims pursuant to section 502(h) under the facts the trustee intends to prove in this proceeding.[12] Alternatively, the trustee's complaint expressly requests that any claims held by PSI be subordinated to the claims of all other creditors under sections 105(a) and 510(c) of the Code. Complaint, Count XXXIV. That is, if the trustee were to recover avoidable transfers from PSI, the trustee will also seek to preclude PSI from asserting any claims against the estate or to subordinate those allowable claims.

If the final judgment on the trustee's claims against PSI yields a recovery from PSI without the creation of any additional claims against the estate, or with the creation of subordinated claims, no party has suggested that the outcome of the third-party litigation would affect the administration of the bankruptcy case in any way. On the contrary, certain parties contend that if PSI is precluded from holding any claims under section 502(h), or if PSI will only hold subordinated claims, that result could only arise from evidence disclosing such wrongful conduct on PSI's part that PSI would be barred from any recovery from third-party defendants. *See generally In re M. Paolella & Sons, Inc.,* 161 B.R. 107 (E.D.Pa.1993), *aff'd without op.,* 37 F.3d 1487 (3d Cir.1994).

■ Remedies designed to address unjust enrichments are all equitable in nature. *See CFTC v. American Metals Exchange Corp.,* 991 F.2d 71, 76 n. 9 (3d Cir.1993); *Voest–*

---

**11.** While I have mentioned only section 502(h) as the source of PSI's contingent claims, I do not overlook that section 548(c) could theoretically give rise to a claim on behalf of a transferee of an avoidable fraudulent conveyance. *See generally In re Cohen,* 199 B.R. 709, 718 (9th Cir. BAP 1996) ("[section] 548(c) grants to good faith transferees who give value to the debtor either a lien or the privilege of retaining the interest transferred to the extent of value"). I am assuming that if the challenged transfers were fraudulent under section 548(a)(1) and if PSI acted in good faith under section 548(c), PSI would elect to retain the payments received rather than pay those sums to the trustee and assert a lien position. *See generally In re Lucar Enterprises, Inc.,* 49 B.R. 717 (Bankr.S.D.Fla.1985). Therefore, I will refer only to section 502(h) as the source of PSI's possible claims against the estate.

**12.** I also assume that the trustee will also maintain that PSI did not act in "good faith" and so would have no rights under section 548(c).

*Alpine Trading USA v. Vantage Steel Corp.*, 919 F.2d 206, 216–17 (3d Cir.1990); *Samuel v. University of Pittsburgh*, 538 F.2d 991, 994–95 (3d Cir.1976); *Robbins v. Kristofic*, 434 Pa.Super. 392, 398, 643 A.2d 1079 (1994); *Pittsburgh's Airport Motel, Inc. v. Airport Asphalt and Excavating Co.*, 322 Pa.Super. 149, 154, 469 A.2d 226 (1983). If PSI is denied any allowable claims against the estate, or if such claims are subordinated, that result would only occur if the trustee were to prove misconduct by PSI that rises to the level of " 'very substantial' misconduct involving 'moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived to their damage' or as gross misconduct amounting to fraud, overreaching or spoliation." *In re M. Paolella & Sons, Inc.*, 161 B.R. at 119 (*quoting In re Osborne*, 42 B.R. 988, 996 (W.D.Wis.1984)). Were such misconduct proven, PSI would be barred from any equitable recovery from the third-party defendants. *See generally Shippenville–Elk Township Volunteer Fire Dep't v. Ladies Auxiliary of Shippenville–Elk Township Volunteer Fire Dep't*, —— Pa.Super. ——, 680 A.2d 923 (1996) (misconduct was not proven therefore plaintiff was permitted to recover funds which unjustly enriched the defendant).[13]

Therefore, the parties base their jurisdictional arguments upon the assumption that PSI could be found liable in some degree to the trustee, and could hold allowable claims against the estate for any sums paid to the trustee which result in all or part of its prepetition loan to the debtor being unpaid. Were that to occur, I am persuaded that neither third-party litigation would have any effect upon the administration of this chapter 7 bankruptcy case.

If PSI does not prevail in its third-party litigation, then such failure would not affect the underlying bankruptcy case. It would simply mean that PSI would be unable to recover from any third-parties. *See, e.g., In re Spaulding & Co.*, 131 B.R. at 89. The assets of the estate and claims against the estate would remain unchanged.

Conversely, If PSI were to prevail against the third parties, then the trustee would obtain recovery from PSI, and PSI would seek indemnification from the third-party defendants. As PSI recognizes, these third-party indemnitors would be subrogated to the claims of PSI to the extent of their payments to PSI. *Accord In re Chambers*, 125 B.R. 788, 793 (Bankr.W.D.Mo.1991); *see generally Tudor Dev. Group, Inc. v. U.S. Fid. & Guar. Co.*, 968 F.2d 357, 361 (3d Cir.1992) (detailing the elements necessary for "equitable"—as opposed to contractual—subrogation under Pennsylvania law).[14]

---

**13.** The application of section 510(c) to creditor misconduct, which is of long-standing, *e.g. Matter of Mobile Steel Corp.*, 563 F.2d 692 (5th Cir. 1977), renders problematic the trustee's contention that a bankruptcy court has the general equitable power to completely disallow a claim based upon the prebankruptcy conduct of a creditor. If such power exists, the trustee views the source of such power as the Bankruptcy Code version of the All–Writs Act, section 105(a). It is unclear why Congress would enact section 510(c), if the a bankruptcy court has the general equitable power to disallow. *See generally, e.g., In re Morristown & Erie R. Co.*, 885 F.2d 98 (3d Cir.1989) (section 105(a) may not be construed to override specific Code provisions); *see also United States v. Noland, Trustee for Debtor First Truck Lines, Inc.*, —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (bankruptcy court does not have the power to equitably subordinate a tax penalty claim absent misconduct by the government). However, that issue is not now before me. But if one assumes that section 105(a) provides a bankruptcy court with the power to completely disallow a claim due to creditor miscon-

duct, then it would follow that such misconduct must be even more egregious than the "gross misconduct" which would justify the subordination of the claim.

I recognize that the definition of "good faith" raised by section 548(c) may differ from the standard applied for equitable subordination. *See generally In re Telesphere Communications, Inc.*, 179 B.R. 544, 557 (Bankr.N.D.Ill.1994) ("courts have varied widely in the general approach they have taken in deciding questions of good faith in the context of fraudulent conveyance law"). However, as noted earlier, section 548(c) will only apply in this proceeding to determine the extent of the trustee's recovery, rather than the extent of PSI's claims against the estate.

**14.** Although not raised by PSI in its memorandum, at oral argument PSI's attorney wondered aloud whether certain settlement agreements entered into in this case between the bankruptcy trustee and certain third-party defendants contained release terms which would prevent those third-party defendants from becoming subrogated to any claim held by PSI under section 502(h).

Thus, PSI maintains that the third-party litigation could conceivably reduce the size of the claims it may have against the estate, while at the same time creating claims against the estate in favor of the third-party defendants. Moreover, if the third-party defendants already have claims against the estate, subrogation would increase the amount of such claims.

It is important to note, however, that after subrogation the amount of claims asserted against this estate will remain exactly the same, regardless of the outcome of the third-party litigation. If the trustee prevails against PSI, PSI could conceivably obtain a claim against the estate under section 502(h). If PSI recovers from third-party defendants, then PSI's claim will be reduced by the amount of its recovery, and the third-party defendants will be subrogated to PSI's position with the same priority and in the exact amount of that reduction. The only difference will be in the identity of the claimant, but the identity of the claimant is immaterial in a chapter 7 liquidation case such as this one. *Accord, e.g., In re Selig*, 135 B.R. 241, 245 (Bankr.E.D.Pa.1992); *In re P.D.S. Development Corp.*, 103 B.R. 93, 95 (Bankr. S.D.N.Y.1989). Thus, as noted by the Bankruptcy Court for the Western District of Missouri:

> As matters now stand, Pinegar is required to pay the amount of the preference to the Trustee, and upon such payment will be entitled to an unsecured claim in the amount of the payment. In the event Pinegar succeeds in its action against Boatmen's, Boatmen's would be required to reimburse Pinegar for the amount so paid to the Trustee, and would succeed to Pinegar's interest as an unsecured creditor in the case. Most importantly, no matter which party prevails in the litigation between Pinegar and Boatmen's, the result will be the same for the estate and its other creditors.

*In re Chambers*, 125 B.R. at 793.

Nonetheless, in its supporting memorandum of law at 13–14, PSI argues that the outcome of litigation which would leave unaltered the amount and priority of claims against the estate but would change the identity of the creditor, as would occur with subrogation, affects the bankruptcy case so that the litigation is "related" to it. In support of this proposition, PSI relies heavily upon two reported decisions: one, *In re Guy C. Long, Inc.*, 74 B.R. 939 (Bankr.E.D.Pa. 1987), is a decision previously rendered by me. The other, *In re Brentano's, Inc.*, 27 B.R. 90 (Bankr.S.D.N.Y.1983), is a decision discussed by the Third Circuit Court of Appeals in *Pacor*. However, in relying upon these two cases, PSI overlooks that both arose in the context of a chapter 11 reorganization, rather than, as here, a chapter 7 liquidation. For jurisdictional purposes, that

---

If so, PSI may argue that the third-party complaints could conceivably reduce its claims against the estate without yielding an equal increase in favor of others.

As the party seeking to establish subject matter jurisdiction, it was incumbent upon PSI to demonstrate the existence of such releases in favor of the estate. *See generally In re Almarc Corp.* It has not done so. Moreover, if it is appropriate to take judicial notice of one of the settlement agreements filed in this case between the trustee and third-party defendant University of Pennsylvania (which agreement has been approved by this court), *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995), the settlement contains a release in favor of the estate of all claims "relating to the Debtor and the Penn Contributions ... from the beginning of the world *to the date of this Agreement....*" The date of the agreement is March 20, 1996. Exhibit A, ¶ 5, to the Trustee's Motion to Approve Settlement Agreement and Release Between the Trustee and the University of Pennsylvania....

Filed Mar. 21, 1996 (docket number 1061). Therefore, this release provision on its face would not apply to subrogation rights which might arise long after the date of the agreement. *Cf. In re G.S.F. Corp.*, 938 F.2d at 1476 (settlement would not bar a third-party defendant from seeking indemnity from the bankruptcy estate).

Accordingly, there is no basis to conclude that the third-party defendants would not succeed to PSI's claims against the estate to the extent that these third-party defendants indemnified PSI.

(Additionally, the trustee's settlement agreement with Mr. Bennett, which was also approved by me, called for the trustee to receive almost all property then owned by this third-party defendant, including his home and automobile. Not only has PSI made no showing of any release terms in favor of the estate which would preclude a subrogation claim, but there would appear to be extremely little likelihood that PSI will be able to recover any sums from Mr. Bennett if its indemnity litigation against him should succeed.)

distinction is significant. *Celotex Corp. v. Edwards,* — U.S. at —, 115 S.Ct. at 1500 ("it is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7. The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter").

In a chapter 11 case, the claims of creditors are classified into appropriate classes; further, all creditors whose claims are placed in an impaired class of claims are authorized to vote on the terms of a proposed reorganization plan. 11 U.S.C. §§ 1122, 1126. In considering whether a class of claims has supported a proposed chapter 11 plan, the dollar amounts of claims voting is material. 11 U.S.C. § 1126(c); *see generally John Hancock Mut. Life Ins. v. Route 37 Bus. Park,* 987 F.2d 154 (3d Cir.1993) (because creditor controlled the class of unsecured claims, confirmation was not possible over opposition of this creditor). Further, under section 1129(a)(10), "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." (An "insider" is a defined bankruptcy term. 11 U.S.C. § 101(31).) In chapter 7 cases, there is no reorganization plan, voting by creditors, nor classification of claims.

In deciding whether an adversary proceeding could have any conceivable effect on the outcome of the *Guy C. Long* chapter 11 bankruptcy, I noted that the assets of the estate could be increased by the outcome of that proceeding. In addition, it was possible that the litigation could result in an increase in the claims held by one unsecured creditor with an equal reduction in the claims held by other creditors. While the total amount of the claims against the chapter 11 estate would remain the same, the creditor whose claim could be increased was a "regular supplier of the debtor," 74 B.R. at 940, who had assisted the debtor in obtaining a construction contract by purchasing a standby letter of credit on the debtor's behalf. *Id.* The debtor in that particular adversary proceeding was attempting to help its supplier by seeking to enjoin any demand of payment under that letter of credit.

In light of the relationship between the debtor and this creditor, it seemed quite plausible that the debtor's regular supplier, who had been willing to assist the debtor's operations by guaranteeing a letter of credit, would be more favorably disposed to vote for a plan of reorganization proposed by the debtor than those creditors who would be repaid by funds derived from the letter of credit. Thus, an increase in the supplier's claim, and the equal reduction in the amount of claims held by other creditors, could result in a larger vote favoring reorganization. This effect on plan voting could have a conceivable effect on the administration of the case.

Similarly, in *Brentano's* a creditor of a chapter 11 debtor sought to enjoin state court litigation brought against a creditor by a lessor of the debtor. The lessor, who held both prepetition and postpetition claims against the chapter 11 estate, sought to recover against the creditor under the terms of a guarantee agreement. The guarantor, in turn, had an indemnification agreement with the debtor. Further, this creditor had guaranteed payment on eleven other leases entered into by the debtor.

In concluding that the dispute between the lessor and the creditor/guarantor was "related to" the lessee's bankruptcy, the bankruptcy court explained:

> The California state court action is clearly a [sic] "related to" the Brentano's reorganization case before this Court and falls within this Court's jurisdictional grant. Underlying the entire matter is Brentano's lease (which Brentano's has rejected). If Pine Realty prevails against MacMillan, MacMillan can recover from Brentano's under its indemnification agreement. The disposition of this claim and other similar claims involving Brentano's leases, MacMillan guaranties, and the Brentano's–MacMillan indemnification agreement will ultimately determine the fate of this reorganization effort. This Court has jurisdiction over the Pine Realty action against MacMillan which is based on the MacMillan guaranty agreement.

.... The order staying Pine Realty is clearly necessary and appropriate in the Brentano's bankruptcy case. As noted above, the claims of MacMillan arising from the guaranty and indemnification agreements amount to the largest unsecured debt in the Brentano's case. Only this Court has a global view of the Brentano's case and reorganization efforts. Disposition of the largest unsecured claims in this forum will facilitate Brentano's efforts to formulate a plan of reorganization. Indeed, in this Court, settlements have been reached with lessors on three Brentano's leases involving MacMillan guaranty agreements. Multiple and haphazard state court litigations will delay and deter ultimate resolution of the bankruptcy case. This comment is not a criticism of state court proceedings; however, each forum has a restricted view of the factors and parties involved. This Court has an overall view of the Brentano's case and all aspects of that case should be before this Court, particularly actions that may determine whether reorganization efforts succeed.

*In re Brentano's, Inc.,* 27 B.R. at 92 (footnote omitted).

While the Third Circuit in *Pacor* mentioned that the third-party litigation in *Brentano's* would result in the guarantor holding an additional claim against the bankruptcy estate, it is important to note that the bankruptcy court in *Brentano's* emphasized that the amount of the claim held by the guarantor would be a significant factor in the debtor's ability to reorganize in chapter 11. Based upon this possible effect on the debtor's ability to reorganize, the bankruptcy court in *Brentano's* concluded that non-debtor litigation was "related to" the pending chapter 11 case and granted the requested injunction. *See Celotex Corp. v. Edwards.*

While the identity of a claimant may, in certain circumstances, affect a chapter 11 debtor's ability to reorganize, the identity of the claimant is not a factor in the administration of a chapter 7 case, such as this one.

The chapter 7 trustee will liquidate the assets of the estate and distribute those proceeds according to section 726. So long as the amount and priority of the claim are unchanged, the identity of the recipient of the dividend is irrelevant to the trustee and his administration of the case.

Accordingly, while PSI is correct that the trustee's litigation against it may conceivably result in PSI's holding unsecured non-priority claims against the estate, and PSI is correct that the outcome of the third-party litigation may conceivably result in third-party defendants being substituted for PSI as claimants, that substitution is immaterial to the administration of this chapter 7 case. Therefore, I conclude that the third-party complaints are not "related to" the chapter 7 bankruptcy case of this debtor, in that their outcome will not affect the administration of the case in any manner. As a result, those proceedings fall outside the scope of this court's subject matter jurisdiction as limited by 28 U.S.C. § 1334.

### III.

■ PSI alternatively argues that I am empowered by 28 U.S.C. § 1367 to take supplemental jurisdiction over these third-party proceedings.

It would seem axiomatic that a non-core, unrelated third party complaint would fall outside the ability of a bankruptcy court to resolve. *E.g., In re Guild and Gallery Plus, Inc.; In re Gallucci,* 931 F.2d 738 (11th Cir.1991). But PSI suggests that a bankruptcy court has the discretion to exercise "supplemental" jurisdiction over a non-core, unrelated proceeding pursuant to 28 U.S.C. § 1367. This statutory provision, in part, affords the *district court* "supplemental jurisdiction over all other claims that are so related to claims in the same action within such original jurisdiction that they form part of the same case or controversy.... Such supplemental jurisdiction shall include claims that involve the joinder ... of additional parties." 28 U.S.C. § 1367(a).[15]

---

15. Subsection 1367(c) permits the district court the discretion to decline the exercise of supplementary jurisdiction in certain enumerated circumstances. *See, e.g., Reading Co. v. City of Philadelphia,* 1996 WL 251511 (E.D.Pa.1996); *North Penn Transfer, Inc. v. ATD–American Co.,*

I recognize that in *In re Summit Airlines, Inc.*, Bankruptcy Judge Scholl considered whether he should exercise such supplementary jurisdiction over an unrelated third party complaint, thus implying that section 1367(a) is applicable in bankruptcy proceedings. There are other courts which have either concluded or assumed that a bankruptcy court has supplemental jurisdiction within the scope of section 1367. *See In re South Bay Medical Associates*, 184 B.R. 963 (Bankr.C.D.Cal.1995); *In re W.J. Services, Inc.*, 139 B.R. 824 (Bankr.S.D.Tex.1992); *In re Eads*, 135 B.R. 387 (Bankr.E.D.Cal.1991); *see also In re Feifer Industries*, 141 B.R. 450 (Bankr.N.D.Ga.1991) (declines to exercise supplementary jurisdiction). For the following reasons, though, I do not agree that a bankruptcy judge has the power under section 1367(a) to assert jurisdiction over an unrelated proceeding.

Section 1367 is a recent enactment intended by Congress to codify (in part) the federal common law principles of pendent and ancillary jurisdiction. *See* Siegel, *Practice Commentary*, 28 U.S.C.A. § 1367 (West, 1996). By its express terms, however, section 1367 is applicable only to the district court; it makes no reference to the bankruptcy court (nor does the legislative history surrounding its enactment).

This statutory provision should be recognized as but one of a number of statutory grants of subject matter jurisdiction issued by Congress to the district courts. Others include diversity jurisdiction, 28 U.S.C. § 1332, admiralty jurisdiction, 28 U.S.C. § 1333, patent jurisdiction, 28 U.S.C. § 1338, postal matter jurisdiction, 28 U.S.C. § 1339 and, of course, bankruptcy jurisdiction, 28 U.S.C. § 1334.

▇▇▇ It is essential to recognize that bankruptcy judges do not have a jurisdictional grant co-extensive with the district court. On the contrary, 28 U.S.C. § 157(a) makes it very clear that the district court may only refer to bankruptcy judges bankruptcy cases and bankruptcy proceedings which arise in or under the Code (core matters) and related proceedings. *See Matter of Walker*, 51 F.3d at 569–70. If a proceeding is unrelated to the bankruptcy case, the district court has no authority to refer it to a bankruptcy judge— even if the proceeding falls within some other federal jurisdictional grant.[16]

Accordingly, a number of courts have concluded, and I agree, that the recent enactment of the supplementary jurisdiction statute in favor of the district court does not, by its very terms, purport to alter the scope of bankruptcy jurisdiction under section 1334 or the power to refer matters found in section 157(a). *E.g.*, *Matter of Walker*, 51 F.3d at 572 ("Because there is no Congressional statute conferring upon the *bankruptcy courts* the power to exercise supplemental jurisdiction, we find no error in the district court's conclusion that the bankruptcy court did not have the power to hear Cadle's contribution claim against Svara") (emphasis in original); *Halvajian v. Bank of New York*, 191 B.R. 56, 58 (D.N.J.1995); *In re Alpha Steel Co.*, 142 B.R. at 470–71; *In the Matter of Romar International Georgia, Inc.*; *In re Remington Development Group, Inc.*; *In re Fisher*, 151 B.R. 895 (Bankr.N.D.Ill.1993); *In re Houghton*; *see also In re Dow Corning Corp.*, 187 B.R. 934, 937–38 (E.D.Mich.1995)

175 B.R. 168 (E.D.Pa.1994). Since I have no supplemental jurisdiction over these two third-party complaints, I express no position whether it would have been appropriate to decline the exercise of such jurisdiction.

**16.** The reasoning of decisions such as *In re W.J. Servs., Inc.* that, as units of the district court, 28 U.S.C. § 151, bankruptcy judges have supplemental jurisdiction because the district courts have such jurisdiction, yields the unsupportable conclusion that bankruptcy court jurisdiction is equal to that provided to the district court. If so, then a bankruptcy court could hear admiralty cases, postal rate cases, patent cases (and the

like) although they are unrelated to any bankruptcy case.

As noted above, by virtue of section 157(a), bankruptcy courts can only consider bankruptcy related matters. Thus, the analysis in *W.J. Servs., Inc.* is unpersuasive. *See also Price v. Gurney*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945) (chapter X bankruptcy petition on behalf of corporation must be dismissed because those acting for corporation did not have authority under state law; the fact that a district court might have diversity jurisdiction to hear a dispute seeking to remove the current corporate board did not accord a bankruptcy court the power to hear such a dispute).

(district court concludes that it does not have supplemental jurisdiction of claims unrelated to a bankruptcy case).[17] Whether a constitutional infirmity would be created if Congress attempted to do so, I need not decide, for Congress made no such attempt.

Thus, section 1367(a) does not provide the necessary authority for me to resolve PSI's unrelated third party complaint.

### IV.

In sum, the two third-party complaints involve non-core claims which are unrelated to the trustee's administration of this chapter 7 bankruptcy case. Their outcome will neither add to nor subtract from the size of the bankruptcy estate, nor will they add to or subtract from claims which will receive a distribution from this estate. Accordingly, they fall outside this court's subject matter jurisdiction and must be dismissed. *Accord In re Spaulding & Co.*, 131 B.R. at 86; *In re Remington Development Group, Inc.*, 180 B.R. at 365; *see also In re Guild and Gallery Plus, Inc.*, 72 F.3d at 1182.

An appropriate order shall be entered.[18]

---

17. I appreciate that in *In re Smith*, 866 F.2d 576 (3d Cir.1989), the Third Circuit acknowledged that bankruptcy courts do possess an inherent power of ancillary jurisdiction; but such power may only be exercised in circumstances much different from this proceeding.

A bankruptcy judge may appropriately exercise discretion, in very limited circumstances, and *retain* jurisdiction over a non-core related proceeding after the underlying bankruptcy case is dismissed. Normally, dismissal of the main case will result in dismissal of the related proceeding. However, in some instances, retention of jurisdiction may be warranted. *Id.*

The retention of jurisdiction in those instances is similar to the power of a district court to retain jurisdiction over a pendent state law claim after the federal claim is dismissed. The power to hear the dispute is determined at the commencement of the civil action and remains, even though the original basis for federal jurisdiction later terminates. *See generally, e.g., Felice v. Sever*, 985 F.2d 1221, 1225 (3d Cir.), *cert. denied*,

509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 725 (1993); *Rheuport v. Ferguson*, 819 F.2d 1459, 1467 n. 13 (8th Cir.1987).

Thus, the predicate for this limited ancillary bankruptcy jurisdiction is for the bankruptcy court to have jurisdiction over the adversary proceeding when it was first commenced. *See also Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 54 (E.D.Tex.1996) ("While *Walker* certainly suggests that a bankruptcy court's exercise of supplemental jurisdiction over third parties asserting state law causes of action against nondebtors is problematic, it does not call into question the more limited use of ancillary jurisdiction to enforce previous court orders").

Here, that precondition does not exist. The instant third-party complaints were unrelated to the main bankruptcy case from the outset. Thus, the ancillary jurisdiction permitted in *Smith* is not relevant to these proceedings.

18. Since the third-party complaints shall be dismissed, it is unnecessary to rule upon the trustee's motion to strike or sever those complaints.