SAUL, EWING, REMICK
& SAUL, Plaintiff,

v.

PROVIDENT SAVINGS
BANK, Defendant.

Civil A. No. 95–262 MMS.

United States District Court,
D. Delaware.

Jan. 5, 1996.

Thomas J. Capano and Mark Minuti of Saul, Ewing, Remick & Saul, Wilmington, Delaware, for plaintiff.

Francis J. Murphy and Jonathan L. Parshall of Murphy, Welch & Spadaro, Wilmington, Delaware; Of Counsel: Walter E. Thomas Jr. of Stern, Lavinthal Norgaard & Daly, Livingston, New Jersey, for defendant.

MURRAY M. SCHWARTZ, Senior District Judge.

## I. Introduction

The motions presently before the Court arise out of a series of transactions involving a note and mortgage on residential property, the funds for which were converted by a mortgage banker now in Chapter 11. The substantive dispute centers upon the parties' respective rights in the note and mortgage relating to the property. Title and interest in the note and mortgage, however, are not at issue in the present motions, and the mortgage banker is not a party to this dispute.

Plaintiff law firm, Saul, Ewing, Remick & Saul ("Saul, Ewing") sued defendant bank, Provident Savings Bank ("Provident") in Delaware Chancery Court, alleging various state law causes of action. The defendant, citing 28 U.S.C. § 1334 as the basis for federal jurisdiction, removed the action to federal court, with an eye towards transferring the case to the District of New Jersey, where defendant has pending an Adversary Proceeding against the mortgage banker in the New Jersey Bankruptcy Court. Plaintiff has filed a motion to remand the action back to the Delaware Chancery Court, arguing, *inter alia*, that this Court lacks subject matter jurisdiction over the dispute and that the defendant's removal was untimely. Defendant has opposed this motion and has alternatively filed a motion pursuant to Bankruptcy Rule 9006(b) to extend the time in which to file the removal petition. The motions before the Court present the following issues: (1) whether the Court has jurisdiction under 28 U.S.C. § 1334; (2) whether defendant's petition to remove was timely filed; (3) the propriety of discretionary remand and/or abstention; and (4) whether defendant's failure to timely petition for removal constitutes excusable neglect.

## II. Facts

Before describing the facts which lead up to the present dispute, it is necessary to identify the parties involved in and related to this action. Pinnacle Mortgage Investment Company ("Pinnacle") is a Pennsylvania corporation, engaged in the business of mortgage banking. Docket Item ("D.I.") 6 at A–

100. Pinnacle's business was to enter into residential mortgage loan transactions with home purchasers and then sell the closed mortgage loans to investors. *Id.* Pinnacle is now in Chapter 11 in the New Jersey Bankruptcy Court, and is not a party to this proceeding. Provident is a New Jersey bank which, for the two years prior to this dispute, provided interim financing for Pinnacle's mortgage loan transactions pursuant to a Warehouse Loan Agreement ("Loan Agreement") dated December 14, 1992. *Id.* Saul, Ewing is a Pennsylvania law partnership whose partners include lawyers licensed to practice in the State of Delaware. *Id.* William Ward ("Ward") is an attorney licensed to practice law in the State of Delaware, and is a partner at Saul, Ewing. *Id.* at A–101. Ward, at all times relevant to this action, acted as agent for Provident in connection with certain residential mortgage closings. *Id.* Gary P. and Jane M. Bennett (the "Bennetts") are Delaware residents who borrowed money for a residential mortgage from Pinnacle (the "Bennett Mortgage," or "Bennett Mortgage Loan"). *Id.*

Under the Loan Agreement, Provident financed Pinnacle's mortgage loans for the interval of time between Pinnacle's closing of mortgage loans with the residential borrower and the sale of the closed mortgage loans to investors in the secondary mortgage market, such as FHLMC ("Freddie Mac"). *Id.* at A–4, A–101. Provident financed the loans by crediting Pinnacle's account at Provident with the amount of mortgage proceeds by a check made payable to Pinnacle, and Pinnacle, in turn, would draw a check on its account payable to the mortgagor and the closing agent. *Id.* Provident would be repaid the monies advanced and loaned to Pinnacle plus interest when permanent buyers or investors of each Pinnacle loan purchased the loan and forwarded the funds to Provident. *Id.* at A–4. The transaction between Pinna-

cle and Provident was structured in such a way that the note and mortgage, payable to Pinnacle, were to be endorsed in blank. The note and mortgage were then forwarded to Provident and held as security until such time as the note and mortgage were sold to investors. *Id.* at A–101.

Ward agreed to act as agent for Provident in connection with the closing for the Bennett Mortgage, which occurred on October 31, 1994. *Id.* The agency arrangement was created by an Agency Agreement, executed by Ward and Provident, which provided, among other things, that "Provident Savings Bank has been granted a security interest in, among other things, the Note and Mortgage to be executed at the time of settlement." *Id.* at A–102. The transaction between Provident and Saul, Ewing turned sour when, unbeknownst to Saul, Ewing, who was relying on Pinnacle's check, Pinnacle converted the funds for its own use, leaving insufficient funds in its account at Provident to cover the check. Ward completed the closing of the Bennett property and issued checks to third parties. *Id.* at A–103. Ward made disbursements to the parties by withdrawal from the Saul, Ewing escrow account.[1] *Id.* The executed note, endorsed in blank, and an assignment of the mortgage were then forwarded to Provident. *Id.* When Saul, Ewing, after disbursing $150,057.44 of its own escrow funds as Provident's agent, presented Pinnacle's check drawn on Pinnacle's account at Provident, Provident refused to honor the check, due to insufficient funds. *Id.* at A–104. On or about November 2, 1994, after the Bennett closing, Provident filled in its name on the blank endorsement on the note and mortgage, thereby consummating an assignment in its favor. The assignment was then duly recorded with the Chester County Recorder's Office on November 15, 1994.[2] *Id.*

1. Counsel for Saul, Ewing explained at oral argument that the law firm has, in connection with its real estate practice, an escrow account whereby the proceeds for some twenty to twenty-five residential or commercial loans are disbursed to the mortgagors. Funds deposited in this escrow account are not traceable to any particular loan. Thus, the Bennett check was forwarded to Saul, Ewing, deposited in the communal escrow ac-

count, and commingled with its contents. When the Bennett check bounced, the money from the Saul, Ewing escrow account had already been paid to third parties, which had the effect of taking money from the account which was designated for some other loan. Saul, Ewing covered the shortfall.

2. Saul, Ewing's complaint in Chancery Court alleges that the assignment was duly recorded

Provident filed an action against Pinnacle, Ward, and various other closing agents in the United States District Court for the District of New Jersey on November 9, 1994, *see Provident Sav. Bank v. Pinnacle Mortgage Investment Corp.*, C.A. No. 94–5357 (D.N.J.), seeking damages and a declaration that the note and mortgage are valid and/or that it holds a valid lien on the instruments. D.I. 5 at 8. Over Provident's objection, the action was transferred to the United States District Court for the Eastern District of Pennsylvania. *Id.* at 3. On February 17, 1995, Ward filed a motion to dismiss the action as it pertained to him. D.I. 6 at A–26.

On February 2, 1995, at 4:17 p.m., Provident and two other Pinnacle creditors filed an involuntary petition against Pinnacle in the New Jersey Bankruptcy Court. *See In re Pinnacle Mortgage Investment Corp.*, Case No. 95–10608 (Bankr.D.N.J.). On that same day, at 4:29 p.m., Saul, Ewing filed its complaint against Provident and Pinnacle in Delaware Chancery Court, seeking (1) a preliminary and permanent injunction against Provident from transferring or encumbering the note and mortgage; (2) a declaratory judgment that Saul, Ewing is the rightful holder of the note and mortgage and/or that the note and mortgage are invalid; (3) a declaratory judgment that Provident holds the note and mortgage in constructive trust for the benefit of Saul, Ewing; and (4) damages. *See Saul, Ewing, Remick & Saul v. Provident Sav. Bank*, C.A. No. 14013 (Del. Ch. Feb. 16, 1995). A copy of the complaint was sent to Provident on or about February 20, 1995, attached as an exhibit to Saul, Ewing's motion to dismiss the Pennsylvania action. D.I. 5 at 9. Provident formally accepted service of the complaint on March 13, 1995. *Id.*

Provident then filed an Adversary Proceeding in the New Jersey Bankruptcy Court on March 22, 1995, *see Provident Sav. Bank.*

*v. Pinnacle Mortgage Investment Corp.*, Adv. Pro. No. 95–1091 (Bankr.D.N.J.), seeking, *inter alia*, a declaratory judgment that the note and mortgage are valid. *Id.* at 9. On April 24, 1995, Ward moved to dismiss the Adversary Proceeding as it pertained to him for lack of subject matter jurisdiction. *Id.* On June 5, 1995, a hearing was held on Ward's motion. The court denied the motion, finding that it had subject matter jurisdiction under 28 U.S.C. § 1334.

Meanwhile, Provident failed to respond to the Saul, Ewing complaint in the Delaware action, and Saul, Ewing moved for an entry of default judgment on April 3, 1995. *Id.* A hearing on the motion was held on April 25, 1995 before the Honorable Myron T. Steele of the Delaware Chancery Court. *Id.* at 9–10. At oral argument, Vice Chancellor Steele entered an order requiring Provident to file an affidavit explaining why it had failed to respond to the complaint and to file an answer and supporting brief. D.I. 6 at A–153–54. On April 27, 1995, Provident filed its petition to remove this action. D.I. 1. Saul, Ewing has moved to remand the action back to the Chancery Court, one of the motions presently before the Court. D.I. 4.

### III. Analysis

#### A. *Motion to Remand*

■ Before addressing the issue of whether the Court should grant Saul, Ewing's motion to remand, the Court must first determine whether it has bankruptcy jurisdiction over the matter in the first instance. The jurisdictional grant to federal district courts over bankruptcy matters is found at 28 U.S.C. § 1334, which provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

with the Recorder of Deeds in and for New Castle County on or about November 2, 1994. *See* D.I. 6 at A–104, ¶ 22. At oral argument, the parties submitted a copy of the recorded assignment, and the date stamp indicated that the recordation occurred on November 15, 1994. This distinction is not relevant to the Court's analysis. However, the Court has noted this distinction in order to address Provident's belief

that the Court may not consider factual allegations other than those alleged in the complaint. Whether or not the Court may consider factual allegations other than those alleged in the complaint is an issue the Court need not decide. Paragraph 22 of Saul, Ewing's complaint does, in fact, allege an assignment of the note and mortgage in Provident's favor. *See id.*

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

■ A bankruptcy court may, by reference from a district court, hear cases arising under title 11 or arising in a case under title 11, including those deemed "core" proceedings as defined at 28 U.S.C. § 157(b). The more frequently litigated issue under § 1334(b), however, and that which is in dispute in the present case, is whether an action is "related to" a case under title 11. The Third Circuit Court of Appeals has formulated a test to determine whether an action is "related to" a bankruptcy proceeding for the purposes of establishing jurisdiction under 28 U.S.C. § 1334:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (citations omitted) (emphasis in original); *In re Selig,* 135 B.R. 241, 244 (Bankr.E.D.Pa.1992). If the dispute is between non-parties and has only a slight effect on the bankruptcy estate, "related to" jurisdiction has been held to be improper. *See In re P.D.S. Dev. Corp.,* 103 B.R. 93, 95 (Bankr. S.D.N.Y.1989) (effect of substituting one creditor of the debtor for another is insufficient for "related to" jurisdiction). For example, numerous courts have held that disputes between creditors as to the priorities of their claims against the debtor are not within the scope of bankruptcy court jurisdiction. *See Selig,* 135 B.R. at 245–46 ("Merely because a debtor's affairs are a prominent aspect of the history between non-debtors does not provide "related to" jurisdiction to a

bankruptcy court over that dispute."); *see also In re Crystal Mfg. & Packaging, Inc.,* 60 B.R. 816, 818–19 (N.D.Ill.1986); *In re Alexander,* 49 B.R. 733, 737 (Bankr.D.N.D.1985); *In re Dr. C. Huff Co.,* 44 B.R. 129, 134–35 (Bankr.W.D.Ky.1984); *In re Guimond Farms, Inc.,* 10 B.R. 177, 179 (Bankr.D.Mass. 1981). Therefore, disputes between parties other than the debtor generally do not invoke the court's "related to" jurisdiction of § 1334 unless the action would have some effect on the bankruptcy estate.

However, if the civil action pertains to the property of the bankruptcy estate, courts have found "related to" jurisdiction. It is this form of "related to" jurisdiction that Provident seeks to establish. With certain exceptions not relevant here, the only property interests of a debtor that become part of the estate are those that exist at the time of the commencement of the case. *See* 11 U.S.C. § 541 revision notes and legislative reports ("The commencement of a bankruptcy case creates an estate."); *see also In re Bobroff,* 766 F.2d 797, 803 (3d Cir.1985) (same). Thus, if Provident can establish that the civil action relates to property of the bankruptcy estate, "related to" jurisdiction might be proper.

■ This Court is informed by decisions of the Third Circuit Court of Appeals which have addressed the issue *sub judice,* i.e. whether the property before the Court should be deemed part of the Pinnacle bankruptcy estate so as to invoke this Court's "related to" jurisdiction. Because the bankruptcy estate is created at the moment the petition is filed, the Court must examine when the debtor first gained or lost its interest in the property in dispute. The Third Circuit Court of Appeals has held that actions pertaining to property acquired *after* the bankruptcy estate has been created does not invoke the "related to" jurisdiction of a district court. In *Bobroff,* 766 F.2d 797, the property at issue was various tort causes of action for malicious prosecution, defamation and interference with contractual relations, arising out of pending proceedings in Bankruptcy Court. *Id.* at 800. The court found that the property did not relate to the bankruptcy case because the causes of action did

not accrue, and thereby become property interests, until after the case was commenced. *Id.* at 803. Therefore, there was no bankruptcy court jurisdiction over the property.

The Third Circuit Court of Appeals has also held that property which is liquidated before or after the creation of the bankruptcy estate no longer belongs to the estate, and a dispute arising out of such property cannot invoke the "related to" jurisdiction of a district court. In *In re Hall's Motor Transit Co.*, 889 F.2d 520 (3d Cir.1989), the property forming the basis of the dispute had previously belonged to the debtor, but had been sold to a third party bidder after the commencement of bankruptcy proceedings. *Id.* at 521. Central Transit, the subsequent buyer of the property, sought declaratory and other relief arising out of condemnation proceedings against the property. *Id.* Central Transit brought the action in bankruptcy court, alleging that the right to use the property in its desired manner was a right belonging to the estate from which the property was derived, and thus the dispute related to property of the bankruptcy estate. *Id.* at 522. The court rejected Central Transit's contention, and found that the passing of the property from the estate removed all claims appurtenant to the property from its jurisdiction.

> Central Transit obtained the property from Hall's in a sale permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction. The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate.

*Id.* Similarly, in *Selig,* 135 B.R. 241, certain bonds and securities of the debtor in which the defendant bank had a security interest were found not to be part of the debtor's estate. *Id.* at 245. Because the property had been liquidated by the bank eighteen months prior to the commencement of the bankruptcy case, it had been removed from the estate.

> The Property in issue therefore clearly does not appear to be, to have ever been, or to have any possibility of becoming, property of the Debtors' estate. Therefore ... the Property is outside of the scope of bankruptcy court jurisdiction. Litigation concerning the Property is, therefore, ... not "related to" the Debtors' bankruptcy case.

*Id.* at 245.

As the discussion above indicates, a court has "related to" jurisdiction over property only when the property is part of the bankruptcy estate. Without deciding the parties' respective interests in the instruments in the case *sub judice,* it is clear that Provident's security interest in the blank endorsed note and mortgage ripened into legal title by virtue of the endorsement in its favor and subsequent recordation of the assignment. As of November 15, 1994, whatever interest Pinnacle had in the note and mortgage was legally extinguished. The property at stake was therefore not part of the bankruptcy estate at the time the bankruptcy action was commenced, on February 2, 1995. Since the property in dispute was not part of the bankruptcy estate on that date, "related to" jurisdiction is lacking.

Provident argues in the alternative that jurisdiction can be found at 28 U.S.C. § 157. Provident argues that § 157(b)(2)(K), determination of the validity, extent and priority of competing liens; § 157(b)(2)(E), proceedings to turn instruments over to court; and § 157(b)(2)(H), transfer of instrument by fraudulent conveyance, are all invoked in this case, and therefore provide the court with jurisdiction as "core" proceedings. *Id.* This argument is without merit. 28 U.S.C. § 157 is not a jurisdictional grant to the district courts, but rather, an "itemization" of the types of proceedings which constitute "core" proceedings appropriate for resolution by the bankruptcy court. Provident cites no authority for the proposition that the district court's jurisdiction is established by this list of "core" proceedings. In fact, Bankruptcy Judge Wizmur had previously rejected the

same argument urged by Provident in an earlier proceeding.[3] As one court explained:

> Subdivision (b)(2) of section 157 then contains a non-exclusive, descriptive listing of "core" proceedings. It is this Court's firm conviction that, although drafted in declaratory form, this subdivision is only descriptive of the types of matters which generally will arise under or arise in a case under title 11.

*In re Nanodata Computer Corp.*, 52 B.R. 334, 341 (Bankr.W.D.N.Y.1985). Since § 157(b) merely lists types of proceedings appropriate for resolution under a district court's § 1334 jurisdictional grant, Provident's argument is circular and therefore meritless. The Court concludes that it lacks jurisdiction to hear this matter under 28 U.S.C. § 1334 since the dispute does not relate to a case under title 11, and therefore, this case must be remanded to Delaware Chancery Court.[4]

In reaching this conclusion, the Court is mindful of the ruling of Judge Wizmur in the Adversary Proceeding in the Bankruptcy Court for the United States District Court for the District of New Jersey. *See Provident Sav. Bank. v. Pinnacle Mortgage Investment Corp.*, Adv.Pro. No. 95–1091 (Bankr.D.N.J.). Judge Wizmur, ruling from the bench on Ward's Motion to Dismiss the Adversary Proceeding as it pertains to him, found that jurisdiction was proper under 28 U.S.C. § 1334.

> Let me agree from the standpoint that I think the resolution of claims, as well as the threshold contention that as a threshold matter the mortgage and note that we're dealing with here constitutes an interest of the debtor under [11 U.S.C. § ] 541, does offer this court the jurisdictional reach, certainly under *Celotex*, which

adopted the *Pacor* criteria to adjudicate the matter, from the standpoint of a discretionary abstention.

Transcript of Proceedings. This Court has reached the opposite conclusion, having had the luxury of time in which to research the issue. As a result, the Court respectfully disagrees with Judge Wizmur. At any rate, this Court, of course, is not bound by a decision of another federal court other than the United States Supreme Court and the Third Circuit Court of Appeals.

### B. *Motion to Extend Time*

The second motion before the Court is Provident's motion, pursuant to Bankruptcy Rule 9006(b)(1) to extend time to remove the action *nunc pro tunc* to April 27, 1995. D.I. 9. Because the Court is without bankruptcy jurisdiction, this motion will be dismissed as moot.

### IV. Conclusion

Because this action does not relate to the property of a bankruptcy estate, this Court has no jurisdiction under 28 U.S.C. § 1334. Therefore, the case will be remanded to Chancery Court. Provident's motion to extend time will be dismissed as moot. An order setting forth these conclusions will issue.

---

3. Judge Wizmur, United States Bankruptcy Judge for the District of New Jersey, heard oral argument on William Ward's motion to dismiss on June 5, 1995. *In re Pinnacle Mortgage Investment Corp.*, Bankruptcy No. 95–10608 (June 5, 1995). With respect to Provident's assertion that § 157 confers jurisdiction upon the district court, Judge Wizmur remarked, "Forgetting about [§] 157, which I agree with you doesn't grant jurisdiction, it's merely a procedural recitation of how the bankruptcy court should resolve matters over which it has jurisdiction. We're, of course,

guided by 28 U.S.C. § 1334." Transcript of Proceedings.

4. Saul, Ewing also urges this Court to remand pursuant to 28 U.S.C. § 1452(b) and/or abstain from accepting jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(c)(1) and Bankruptcy Rule 5011(b). D.I. 5 at 18. Since the Court finds that jurisdiction is lacking under 28 U.S.C. § 1334 and will remand, it will not reach the abstention or discretionary remand arguments.