### In re ELTECH, INC., d/b/a Eagle Interiors, Debtor.

### Enterprise Bank, Plaintiff,

### v.

### Eltech, Inc., d/b/a Eagle Interiors, a Pennsylvania corporation and Irwin & Leighton, Inc., a Pennsylvania corporation, Defendants.

### Bankruptcy No. 02–28077–MBM.
### Adversary No. 02–2636–MBM.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 2, 2004.

---

John R. O'Keefe, Jr., Pittsburgh, PA, for Enterprise Bank.

Lyndall J. Huggler, Blumling & Gusky, Pittsburgh, PA, for Irwin & Leighton, Inc.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **2nd day** of **August, 2004,** upon consideration of (a) the Complaint for Turnover of Property filed by Enterprise Bank (hereafter "the Bank") on October 18, 2002, wherein the Bank (i) formally brings a three count action for turnover, breach of contract, and replevin against both Eltech, Inc., the instant debtor (hereafter "the Debtor"), and Irwin & Leighton, Inc. (hereafter "I & L"), an entity for whom the Debtor provided prepetition construction services on a subcontract basis, and (ii) seeks as a recovery from both the Debtor and I & L nothing more than the funds—or the amount of the funds—that it alleges it was entitled to receive from I & L pursuant to a joint pay agreement between the Debtor and I & L, which agreement (such agreement is formally entitled "Authority for Payment by Joint Check" and shall hereafter be referred to as "the Joint Pay Agreement") was entered into on behalf of the Bank so as to ensure that the Debtor would satisfy a loan obligation that it intended to, and ultimately did, incur with the Bank (hereafter "the Bank's Loan Claim");

and upon consideration of the Joint Pay Agreement, wherein the Debtor and I & L essentially agreed that I & L would pay some portion of a contractual amount that it owed to the Debtor to the Bank in satisfaction of the Bank's Loan Claim against the Debtor, the amount of which portion of such contractual amount is now the subject of a heated dispute between I & L and the Bank;

and given that (a) the above-captioned bankruptcy case was converted from a Chapter 11 case to one under Chapter 7 on March 23, 2003, notwithstanding that it was a Chapter 11 case when the Bank commenced the instant adversary proceeding, and (b) the Chapter 7 Trustee for the instant case has concluded that there are no assets to administer for the benefit of creditors, see Trustee's Report of No Distribution, Docket # 224 (entered 7/15/03);

and after notice and a trial held on April 26, 2004;

and given that neither an official of, nor counsel for, the Debtor even appeared at the April 26, 2004 trial, which fact is not surprising (a) since, by the date of the trial, the instant bankruptcy case was a no-asset Chapter 7 case involving a corporate debtor, and (b) given that any potential judgment that might be entered against the Debtor in the instant adversary proceeding thus would necessarily not be satisfied;

and because the Court, in light of the foregoing, construes the Debtor's nonappearance at the trial as a voluntary, albeit merely technical, default with respect to liability on its own behalf in the instant adversary proceeding;

and since, given such technical default by the Debtor in the instant adversary proceeding, the Bank's three-count action now is reduced to nothing more than litigation between two nondebtor entities, namely the Bank and I & L;

and since, moreover, the outcome of such litigation between the Bank and I & L, in light of the foregoing, cannot now conceivably have any effect upon the administration of the instant no-asset Chapter 7 case,

it is hereby **ORDERED, ADJUDGED, AND DECREED** that the instant adversary proceeding (i.e., the Bank's three-count action), to the extent that the same remains pending as against I & L in this Court, is **DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.**[1]

■ The Court dismisses the balance of the instant adversary proceeding *sua sponte,* that is upon its own motion, pursuant to Fed.R.Civ.P. 12(h)(3), which rule is made applicable herein pursuant to Fed. R.Bankr.P. 7012(b). Such decision by the Court is both procedurally proper and timely because

[t]he language of Rule 12(h)(3) indicates that lack of subject matter jurisdiction may be considered at any time by the court, whether on motion of one

of the parties, some other form of suggestion or even by the court *sua sponte.* It has been held that such a suggestion is not untimely even if made after final judgment or an appeal.

10 *Collier on Bankruptcy,* ¶ 7012.10[3] at 7012–24 (Bender 2003); *see also, e.g., In re Wolverine Radio Co.,* 930 F.2d 1132, 1137–1138 (6th Cir.1991) (same); *In re Notchcliff Associates,* 139 B.R. 361, 369 (Bankr. D.Md.1992) (same).

■ The Court also holds, and of course, that it matters not to the Court's decision to dismiss for lack of subject matter jurisdiction that the parties, that is the Bank and I & L, have stipulated to the existence, and indeed consent to the exercise,[2] of subject matter jurisdiction by the Court over the Bank's three count action, *see* Am. Pretrial Statement/Stipulation, at ¶ 2. The Court so holds because (a) "[p]arties can neither waive nor consent to subject matter jurisdiction," *Wolverine Radio,* 930 F.2d at 1137–1138, and (b) "no action of the parties can confer subject-matter jurisdiction upon a federal court," *Id.* at

---

**1.** The Court dismisses the instant adversary proceeding, that is the Bank's three-count action, without prejudice to, and so that the Bank may exercise, the Bank's right to initiate such action in the appropriate court, which court would appear to be a Pennsylvania state court. If the Bank chooses to pursue its three-count action in a Pennsylvania state court, then the Bank may take action itself to effect a transfer of such action from this Court to such state court. *See* 42 Pa. C.S.A. § 5103(b) (Purdon's 2004); *see also In re Shuman,* 277 B.R. 638, 655 n. 9 (Bankr. E.D.Pa.2001) (quoting from 42 Pa.C.S.A. § 5103(b) and pointing out that, after a federal court dismisses for lack of subject matter jurisdiction, § 5103(b) leaves it up to a litigant to take the steps necessary to effect a transfer to state court); *Perez v. Shop Rite,* 2001 WL 1360141 at *1 & n. 3 (E.D.Pa.2001) (same).

**2.** The Court notes that the Bank and I & L formally "consent" to this Court's exercise of

subject matter jurisdiction pursuant to 28 U.S.C. § 157(c)(2). What the parties really mean when they say that they so consent pursuant to such statutory provision, however, is that they consent to this Court's entry of final orders and judgments in the instant adversary proceeding, over which the parties stipulate this Court possesses subject matter jurisdiction of the "related to," noncore variety. The Court so concludes because § 157(c)(2) does nothing more than allow the parties to consent to a bankruptcy court's entry of final orders and judgments in noncore proceedings over which such court independently determines that it has "related to" subject matter jurisdiction, absent which consent such court, pursuant to 28 U.S.C. § 157(c)(1), is free to enter only proposed, rather than final, orders and judgments which must then be ratified by the appropriate district court. *See* 28 U.S.C.A. § 157(c) (West 1993).

1138 n. 6 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)); *see also Notchcliff Associates,* 139 B.R. at 369 (same).

The substance of the Court's decision to dismiss for lack of subject matter jurisdiction is set forth in some detail below.

### I.

 A bankruptcy court possesses at least "related to," noncore subject matter jurisdiction over an adversary proceeding if

"... the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." "'A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.'"

*Halper v. Halper,* 164 F.3d 830, 837 (3rd Cir.1999) (citations and footnotes omitted). However, it has been held generally that bankruptcy courts lack subject matter jurisdiction over litigation, and particularly nondebtor litigation, if

said litigation (a) will have a $0.00 effect on the recovery of other creditors, either because the pertinent bankruptcy case is a no-asset Chapter 7 case or involves a Chapter 11 plan with a $0.00 distribution to unsecured creditors, *see In re Foundation for New Era Philanthropy,* 201 B.R. 382, 390 (Bankr.E.D.Pa.1996); *[In re] Incor,* 113 B.R. [212] at 218 [(D.Md. 1990)], or (b) will have a "slight" effect on the pertinent bankruptcy estate, such

as the substitution of one creditor for another, *see In re P.D.S. Development Corp.,* 103 B.R. 93, 95 (Bankr.S.D.N.Y. 1989), or a dispute between creditors as to their respective priorities vis-a-vis the bankruptcy estate. *See Saul, Ewing, Remick & Saul v. Provident Savings Bank,* 190 B.R. 771, 775 (D.Del.1996) (citing five cases).

*In re Allegheny Health, Education and Research Foundation (Tenet HealthSystem Philadelphia, Inc., et al. v. Mellon Financial Corp.),* Bankr.No. 98–25773–MBM, Adv. No. 00–2090–MBM, at 8 (July 21, 2000).

 As for when subject matter jurisdiction should be ascertained, this Court has previously held on several occasions that "'if a federal court possesses subject matter jurisdiction over an action at the time it is commenced, a subsequent event cannot divest the court of that subject matter jurisdiction.'" *In re Allegheny Health, Education and Research Foundation (Philadelphia Health Care Trust v. Tenet HealthSystem Philadelphia, Inc.),* Bankr.No. 98–25773–MBM, Adv. No. 99–2468–MBM, at 5 (Feb. 5, 2001) (quoting *In re Celotex Corp.,* 124 F.3d 619, 626 (4th Cir.1997) (citing *Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991))); *see also In re Allegheny Health, Education and Research Foundation,* 265 B.R. 88, 97 (Bankr.W.D.Pa.2001) (citing to preceding citation); *Mellon Financial (In re AHERF),* Adv. No. 00–2090–MBM, at 9 n. 1 (July 21, 2000) (same). At least one other bankruptcy court in the Third Circuit has recently held in a similar fashion. *See In re Shuman,* 277 B.R. 638, 649 (Bankr.E.D.Pa.2001) ("As the Supreme Court has explained, '[t]he existence of federal [subject matter] jurisdiction ordinarily depends on the facts as they exist when the complaint is filed'"). However,

another bankruptcy court in the Third Circuit, in an even more recent decision than either the latter one or any of those by this Court, has held that, even if federal subject matter jurisdiction exists as of the time of the filing of a complaint regarding a bankruptcy matter, federal subject matter jurisdiction cannot exist when there is no longer any conceivable effect on the bankruptcy estate. *See In re Spree.Com Corp.*, 295 B.R. 762, 768 (Bankr.E.D.Pa. 2003). Significantly, the *Spree.Com* court, in so holding, cited not only to specific instances where a bankruptcy court is divested of federal subject matter jurisdiction, *see Spree.Com*, 295 B.R. at 768–769 (citing *In re Hall's Motor Transit Co.*, 889 F.2d 520 (3rd Cir.1989), and *In re Smith*, 866 F.2d 576, 579 (3rd Cir.1989)), but also to *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3rd Cir.1996), wherein the Third Circuit observed, *inter alia*, that the "general principle that [federal subject matter] jurisdiction is determined at the time the suit is filed [(hereafter 'the Time of Filing Rule')] ... is most often recognized in diversity cases[3] and 'has been applied only rarely to federal question cases.'" *Kabakjian v. United States*, 267 F.3d 208, 212 (3rd Cir.2001). In light of such pronouncement by the Third Circuit, and given the persuasiveness of the *Spree.Com* decision, and since subject matter jurisdiction over bankruptcy matters is not predicated upon parties' diversity of citizenship, this Court concludes henceforth that (a) the Time of Filing Rule is inapplicable to bankruptcy matters, at least matters of the noncore variety such as is the instant matter, (b) it is thus duty bound to ascertain *throughout the course* of a bankruptcy matter whether the same will have any conceivable effect on a bankruptcy estate, and (c) if, at any time during such matter, a determination is reached that such matter will not have any such conceivable effect, then the Court is divested of subject matter jurisdiction over such matter.

■ Applying the foregoing law to the instant noncore matter, the Court holds that, even if it possessed subject matter jurisdiction over the instant adversary proceeding as of the time when the Bank filed its Complaint for Turnover of Property (which proposition is, as set forth below, questionable at best, *see infra* pp. 666–67), the Court was divested of such subject matter jurisdiction on July 15, 2003, that is after the Debtor's bankruptcy case was converted from Chapter 11 to Chapter 7 and the Chapter 7 Trustee for such case had concluded that there were no assets to administer for the benefit of creditors. The rationale for such conclusion by the Court is set forth below.

As an initial matter, the Court can only identify two discrete bases upon which it could have possibly possessed subject matter jurisdiction over the instant adversary proceeding—that is, two discrete ways by which the instant adversary proceeding could have conceivably affected the Debtor's bankruptcy estate—prior to the conversion of the instant bankruptcy case from Chapter 11 to a no-asset Chapter 7 case, namely:

(a) that a judgment in favor of the Bank and against I & L in the instant adversary proceeding would automatically result in the elimination of the Bank's Loan Claim against the Debtor, and

(b) that a judgment in favor of the Bank and against the Debtor in the instant

---

**3.** The *Freeport–McMoRan* decision, which decision is cited to by this Court indirectly in three of its *AHERF* decisions that are, in turn, cited herein, *see supra* p. 663, is a diversity case.

adversary proceeding would result in yet another claim against the Debtor.

However, that the Bank's Loan Claim would be eliminated were the Bank to prevail against I & L in the instant adversary proceeding cannot, as a matter of law, any longer materially affect the Debtor's bankruptcy estate so as to support federal subject matter jurisdiction after the conversion of the instant bankruptcy case to a no-asset Chapter 7 case given that the elimination of a claim in a no-asset Chapter 7 case, as set forth above, will have a $0.00 effect on the recovery of other creditors, *see supra* p. 663. Similarly, that an additional claim would be levied against the Debtor's bankruptcy estate were the Bank to prevail against the Debtor in the instant adversary proceeding also cannot, as a matter of law, any longer so materially affect the Debtor's bankruptcy estate after the conversion of the instant bankruptcy case to a no-asset Chapter 7 case given that the establishment of an additional claim in a no-asset Chapter 7 case, as set forth above, will also have a $0.00 effect on the recovery of other creditors, *see supra* p. 663.[4]

Therefore, the Court, even if it possessed subject matter jurisdiction over the instant adversary proceeding as of the time when the Bank filed its Complaint for Turnover of Property, was divested of such subject matter jurisdiction on July 15, 2003, that is after the Debtor's bankruptcy case was converted to a no-asset Chapter 7 case.

## II.

■ Furthermore, the Third Circuit has observed that the Time of Filing Rule

originated only so as to prevent a party from manipulating federal diversity subject matter jurisdiction, such as by adding a nondiverse party to defeat diversity of citizenship. *See New Rock Asset Partners*, 101 F.3d at 1503–1504. Accordingly, the Third Circuit has expressly rejected an absolute application of such rule, at least in nondiversity cases, and has instead applied such rule only in instances when a party takes action " 'designed to eliminate the federal claim [so that, consequently, such action] will not [operate to] defeat federal jurisdiction.' " *Id.* at 1503. In light of the foregoing, the Court holds that the Time of Filing Rule, if it applies at all to bankruptcy matters, only so applies in those instances when a party takes action with the purpose and design of eliminating a bankruptcy court's federal subject matter jurisdiction.

Applying the foregoing law to the instant adversary proceeding, the Court cannot apply the Time of Filing Rule in the instant proceeding because, even though the Bank was among those that sought conversion of the instant bankruptcy case from Chapter 11 to Chapter 7, the Bank obviously did not seek such conversion with the purpose and design of eliminating this Court's subject matter jurisdiction over the Bank's own adversary action, that is the instant adversary proceeding. Therefore, the Time of Filing Rule shall not apply in the instant adversary proceeding, which means that the Court must take into account the conversion of the instant bankruptcy case from Chapter 11 to a no-asset Chapter 7 case when ascertaining the existence or not of subject matter jurisdiction over such proceeding. For the

---

4. The Court also notes that, even if the acquisition of a judgment against the Debtor in the instant adversary proceeding were sufficient, by itself, to constitute a basis for subject matter jurisdiction by the Court over such pro-

ceeding, the Debtor's default by virtue of its nonappearance at trial would, by itself, have served to divest the Court of subject matter jurisdiction over the remaining two-party dispute between the Bank and I & L.

reasons set forth in part I. above, when the Court takes into account such conversion, it is constrained to conclude that, even if it perhaps initially possessed subject matter jurisdiction over the instant adversary proceeding, such conversion operated to divest the Court of such subject matter jurisdiction.

## III.

■ The Court, having held that it was divested of subject matter jurisdiction over the instant adversary proceeding even if it initially possessed such jurisdiction, need not explore whether such jurisdiction existed in the first instance. However, so as to complete the jurisdictional analysis, the Court doubts seriously whether it possessed, indeed holds that it did not possess, subject matter jurisdiction over the instant adversary proceeding when the Bank filed its Complaint for Turnover of Property. The Court so holds for several reasons.

First, that an additional claim would be levied against the Debtor's bankruptcy estate were the Bank to prevail against the Debtor in the instant adversary proceeding could not, as a matter of law, have materially affected the Debtor's bankruptcy estate so as to support federal subject matter jurisdiction pre-conversion given that (a) such additional claim would, in reality, amount to nothing more than an alternative basis for I & L to recover the same dollar amount already due from the Debtor via the Bank's Loan Claim, (b) such additional claim would thus do no more than substitute for an already-existing claim against the Debtor's bankruptcy estate, that is the Bank's Loan Claim, and (c) such substitution process regarding the Bank's claims against the Debtor would have a $0.00 effect on the recovery of not only the Bank but other creditors of the Debtor as well.

Second, that the Bank's Loan Claim would be eliminated were the Bank to prevail against I & L in the instant adversary proceeding could not, as a matter of law, have so materially affected the Debtor's bankruptcy estate pre-conversion given that (a) were the Bank to so prevail against I & L, then, in all likelihood, I & L would, in turn, have a claim back against the Debtor in an identical amount, indeed identical in every respect via the doctrine of equitable subrogation,[5] (b) a recovery by the Bank against I & L thus would accomplish nothing more, from the standpoint of the Debtor's bankruptcy estate, than the substitution of one creditor (I & L) for another (the Bank) with respect to the same claim, and (c) such substitution of creditors, as set forth above, would have a

---

**5.** The Bank and I & L agree that I & L paid various of the Debtor's vendors with the money that the Bank asserts should have been paid by I & L to the Bank by virtue of the Joint Pay Agreement, which money constitutes the precise recovery that is sought by the Bank from I & L in the instant adversary proceeding. The Court is also aware that I & L involuntarily paid such vendors of the Debtor pursuant to various joint pay agreements that were entered into between I & L and the Debtor on behalf of such vendors—the Court notes that, while it excluded evidence regarding such joint pay agreements for purposes of the instant adversary proceeding, such evidence would not be excluded in any litigation between the Debtor's bankruptcy estate and I & L regarding a claim by I & L against the Debtor. Of course, if I & L were to be compelled by a judgment in the instant adversary proceeding to pay to the Bank the same amount that it has already paid to the Debtor's vendors, then I & L would have involuntarily paid claims of the Debtor in the same amount twice. The preceding observations by the Court compel the Court to conclude that I & L would have a subrogation claim back against the Debtor in an amount equal to that sought by the Bank from I & L in the event that the Bank were to prevail against I & L in the instant adversary proceeding.

"slight" effect on the Debtor's bankruptcy estate, so slight, in fact, that it would be insufficient, by itself, to support this Court's subject matter jurisdiction over such proceeding, *see supra* p. 663.

Therefore, the Court did not possess subject matter jurisdiction over the instant adversary proceeding when the same was initially commenced by the Bank's filing of its Complaint for Turnover of Property.

### IV.

 Finally, the Court is aware that bankruptcy courts, at least those that are in the Third Circuit, possess the discretionary power to retain subject matter jurisdiction over a noncore related proceeding after the underlying bankruptcy case has been dismissed. *See Smith,* 866 F.2d at 580; *New Era Philanthropy,* 201 B.R. at 399 n. 17 (discussing the Third Circuit's decision in *Smith* ). Such discretionary power the Third Circuit derived by analogy from a district court's power to dispose of ancillary and pendent state law claims after a federal claim is dismissed. *See Smith,* 866 F.2d at 580; *New Era Philanthropy,* 201 B.R. at 399 n. 17.

The Court questions whether such discretionary jurisdictional retention power could exist in the instant adversary proceeding, however, because, as the Court observes, such discretionary retention power apparently has been confined to those instances where an underlying bankruptcy case has either closed or been dismissed prior to the conclusion of a noncore related proceeding, *see, e.g., Smith,* 866 F.2d at 580; *New Era Philanthropy,* 201 B.R. at 399 n. 17; the Court is simply unaware of any case authority that extends such power to instances when an underlying bankruptcy case is, as in the case herein, merely converted from Chapter 11 to Chapter 7. As well, "the predicate for

this [so-called] limited ancillary bankruptcy jurisdiction is for the bankruptcy court to have jurisdiction over the adversary proceeding when it was first commenced." *New Era Philanthropy,* 201 B.R. at 399 n. 17. Because, as set forth in part III. above, the Court did not possess subject matter jurisdiction over the instant adversary proceeding when the same was initially commenced by the Bank, the Court could not possess any discretionary power to retain subject matter jurisdiction over such proceeding after the Debtor's bankruptcy case was converted to Chapter 7.

Therefore, the Court does not possess any discretionary authority to retain subject matter jurisdiction over the instant adversary proceeding subsequent to conversion of the Debtor's bankruptcy case to Chapter 7.

### V.

**IN SUMMARY,** the instant adversary proceeding, to the extent that the same remains pending as against I & L in this Court, is **DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.**