In re DVI, INC., et al., Debtors.

Michael Guarino, Plaintiff,

v.

DVI Financial Services, Inc.; DVI Receivables Corp. XV, LLC; Lyon Financial Services, Inc. dba U.S. Bank Portfolio Services; U.S. Bank N.A.; Merrill Lynch 7 Co., Inc.; and Hackensack Medical Realty, L.L.C., Defendants.

Bankruptcy No. 03–12656 (MFW).
Adversary No. 04–54129 (MFW).

United States Bankruptcy Court,
D. Delaware.

May 23, 2005.

Raymond H. Lemisch, Esquire, Adelman, Lavine, Gold and Levin, Wilmington, DE, Josef S. Athanas, Esquire, Latham & Watkins LLP, Chicago, IL, for Debtors.

Howard S. Feintuch, Esquire, Feintuch, Porwich & Feintuch, Jersey City, NJ, for Guarino.

Barry Klayman, Esquire, Wolf, Block, Schorr and Solis–Cohen LLP, Wilmington, DE, for Hackensack Medical Realty, L.L.C.

Rachel L. Hollander, Esquire, Brown, Raysman, Millstein, Felder & Steiner LLP, New York, NY, Neal J. Levitsky, Esquire, Fox Rothschild LLP, Wilmington, DE, for DVI Receivables Corp. XV, LLC, Lyon Financial Services, Inc. dba U.S. Bank Portfolio Services, U.S. Bank N.A., and Merrill Lynch 7 Co., Inc.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Chief Judge.

This matter is before the Court on the Defendants' Motions to Dismiss the Complaint filed by Michael Guarino ("Guarino"). Guarino now consents to dismissal

of the Complaint but on different grounds. We will dismiss the Complaint for the reasons set forth below.

## I. FACTUAL BACKGROUND

DVI Financial Services ("DVI–FS") was in the business of lending money to medical groups and practitioners to permit them to buy or lease diagnostic and other therapeutic medical equipment. DVI–FS obtained the funds necessary to finance the loans and equipment leases in part through securitization facilities. As part of its business, DVI–FS extended loans totaling approximately $3.6 million to Essex Street Properties, L.L.C. and Hackensack Surgi–Center, L.L.C. ("the Borrowers") for the purpose of buying real estate located at 321 Essex Street, Hackensack, New Jersey, along with medical equipment and related personalty (collectively "the Property").

The Borrowers defaulted on the loans and on April 25, 2003, DVI–FS commenced a foreclosure action against the Property. Sometime thereafter, as part of a securitization facility, the loans (together with the security interests securing the loans) between DVI–FS and the Borrowers were sold by DVI–FS to DVI Receivables Corp. XV, LLC ("Rec XV").[2] After the sale, DVI–FS continued to service the loan under a servicing agreement with Rec XV.

On August 23, 2003, a voluntary petition under chapter 11 was filed by DVI–FS and its affiliates DVI Inc. ("DVI") and DVI Business Credit Corp. ("DVI–BC") (collectively "the Debtors"). DVI is the parent of DVI–BC and DVI–FS.

DVI–FS continued with foreclosure proceedings against the Property post-petition. On January 9, 2004, the foreclosure

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Rec XV is a special purpose entity and subsidiary of DVI–FS.

sale occurred, and on March 19, 2004, the Sheriff's Deed was issued. Apparently due to an administrative or clerical error, title to the Property was issued in the name of DVI–FS and not in the name of Rec XV, which actually held the mortgage at that time.

On June 9, 2004, the Debtors filed a motion ("the Sale Motion") seeking authority to transfer legal title to the Property to Rec XV and authorizing DVI–FS, in its capacity as controlling shareholder of Rec XV, to consent to a sale by Rec XV of its interest in the Property to Hackensack Medical Realty, L.L.C. ("HMR"). In the Sale Motion, the Debtors stated:

> Additionally, the Debtors seek authorization, to the extent necessary, to consent to the Sale of the Property by Rec XV, a non-Debtor subsidiary. Although Court approval is not required for the sale of the property owned by non-debtor subsidiaries, because certain of the Debtors are indirect shareholders in Rec XV, the Debtors' consent to the Sale of the Property held by Rec XV may be required.

On that same date, the Debtors entered into a written contract of sale with HMR pursuant to which DVI–FS, U.S. Bank and Rec XV agreed to sell the Property to HMR for $2.3 million.

On June 24, 2004, Guarino filed an objection to the Sale Motion. On July 1, 2004, Guarino initiated this adversary proceeding by filing a complaint against DVI–FS, Rec XV, the lenders to Rec XV and HMR (collectively "the Defendants"). In the Objection and the Complaint, Guarino asserted that he had reached an oral agreement on or about November 18, 2003, with the Defendants to purchase the Property for $1.8 million. Guarino sought a declaration from this Court that the agree-

ment was legally enforceable and a mandatory injunction directing specific performance of that agreement. Alternatively, Guarino sought money damages.[3]

On July 7, 2004, we heard oral argument on the Sale Motion and Guarino's objection. At the conclusion of argument, we granted the Motion to the extent DVI–FS sought authority to transfer title of the premises to Rec XV. Specifically, we stated:

> [M]y only ruling would be that to the extent the debtor had legal title to the property it was bare legal title and did not have equitable ownership in the property that that belonged to Rec. [XV] and therefore I will permit the debtor to transfer title to Rec [XV].

(*See* Tr. dated July 7, 2004, at p. 67.)

With respect to whether or not there was a binding agreement between DVI–FS and Guarino, however, we held:

> Well, I can rule as I advised that even if there were an agreement between the debtor and Mr. Guarino that it was subject to bankruptcy court approval and without the bankruptcy court approval of that agreement the debtor is not bound by it under Section 363.

(*Id.*) After so ruling, we continued to hear other matters in the DVI case. At the conclusion of the hearing, counsel for the Debtors bench-filed a form of order which he stated represented our ruling at the hearing. We entered the order at that time.

On July 20, 2004, DVI–FS transferred title to the Property to Rec XV. Thereafter, on July 30, 2004, the Property was sold to HMR as contemplated by the contract for sale.

---

**3.** Guarino also filed a complaint in the United States District Court for the District of New Jersey on July 9, 2004, ("the District Court Action") seeking the same relief as sought in this adversary proceeding.

In the interim, Guarino filed a motion to vacate the July 7 Order, contending that it conflicted with the actual rulings at the hearing and that we did not have subject matter jurisdiction to adjudicate state-law disputes between non-debtors over assets that are not property of the estate. Guarino asserted that the July 7 Order contained recitals suggesting we had granted authority to the non-debtor entities to sell the Property under section 363 and that we had ruled that Guarino's agreement with the non-debtors was not enforceable. Guarino specifically objected to paragraphs 4, 8 and 9 of the order.

On August 3, 2004, we heard oral argument on Guarino's motion to vacate. At that time it became apparent that Debtors' counsel had not consulted with counsel for Guarino about the language of the form of order presented at the conclusion of the July 7 hearing and that Debtors' counsel had not modified the form of order as a result of our rulings at the July 7 hearing. Instead, counsel for the Debtors had presented the proposed order attached to the original Sale Motion. After considering the pleadings and various arguments of counsel, we granted Guarino's motion in part, stating "I did not authorize non-debtor parties to sell the property.... I have no authority to approve a sale by a non-debtor." (*See* Tr. dated August 3, 2004, at p. 20.) Consequently, in an order dated September 14, 2004, we vacated the July 7 Order and granted the Sale Motion, in part, to authorize only the transfer by DVI–FS of legal title in the Property to Rec XV and the consent by the Debtors to the sale of that Property by Rec XV.

Prior to our ruling on September 14, the various Defendants had filed Motions to Dismiss Guarino's adversary. We expected our ruling to moot this adversary and were advised by the Debtors that the matter was settled. No stipulation of settlement or dismissal was forthcoming, however-

er. Instead, Guarino filed a certification of counsel consenting to dismissal of the adversary solely due to lack of subject matter jurisdiction. We therefore address the pending Motions to Dismiss.

## II. *JURISDICTION*

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. section 157(b)(2)(N). Although Guarino asserts that we now lack subject matter jurisdiction over this adversary proceeding, we have jurisdiction to determine that question. *See, e.g., Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

■ Additionally, with respect to the issues raised at the July 7 hearing, we had jurisdiction to determine whether the Debtors had an interest in the Property before we could approve a sale of that Property. *See, e.g., In re Stein,* 281 B.R. 845, 848 (Bankr.S.D.N.Y.2002) ("Since the trustee can only sell property of the estate under § 363(b), the threshold question is whether [the assets to be sold] are property of the estate").

## III. *DISCUSSION*

The Defendants raise many reasons why the Complaint should be dismissed. The Debtors argue that the July 7 Order determined the issues raised by the Complaint and that, therefore, the adversary is barred by the doctrines of res judicata or collateral estoppel. Specifically, they argue that we have already determined that there was no agreement between DVI–FS and Guarino because it had not been approved by the Court and that, even if there were such an agreement, DVI–FS had no interest in the Property other than bare

legal title and was therefore unable to convey it to Guarino.

Rec XV joins in that argument and also argues that there is no merit to the Complaint because Guarino's claims are barred by the statute of frauds (since there was no written agreement between Guarino and the other parties for the sale of the Property). Rec XV also argues that the Court now lacks subject matter jurisdiction because the Property has now been conveyed by DVI–FS to Rec XV and by Rec XV to HMR.

HMR asserts that the only counts of the Complaint relevant to it are the counts seeking an injunction preventing the sale of the Property to it and specific performance of the alleged contract of sale between Guarino and DVI–FS. Because the Property has already been conveyed to it, HMR asserts that these counts are moot.

In his Certification of Counsel filed on October 12, 2004, Guarino agrees that this adversary proceeding should be dismissed. However, he asserts that we may do so only on the ground of lack of subject matter jurisdiction.[4] Guarino contends that at the August 3, 2004, hearing we acknowledged that we lacked subject matter jurisdiction by stating that we did not have authority to approve a sale of the Property by a non-debtor. (*See* Tr. dated August 3, 2004, at p. 20.) Guarino maintains that there is no further need to prosecute this adversary which was only filed because he was uncertain whether DVI–FS had any interest in the Property. Since that has now been clarified, Guarino seeks to pursue his remedies against the non-debtor Defendants in the District Court Action.

■ We agree with all the parties that this adversary proceeding should be dis-

missed. To the extent that the Complaint sought a ruling that DVI–FS had an interest in the Property and that there was an enforceable agreement with Guarino to sell the Property to him, we have already determined that issue in our ruling on July 7, 2004. The Order dated September 14, 2004, as well as the transcripts from both the July 7 and August 3 hearings makes that clear. Those issues were specifically raised by Guarino's objection to the Sale Motion and were essential to our final ruling on the Motion. The principles of res judicata and collateral estoppel bar the re-litigation of those issues in this proceeding. *See, e.g., United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir. 1984) (holding that res judicata bars litigation in a second suit of issues already determined by a final judgment on the merits in a prior action involving the same parties); *Board of Trs. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,* 983 F.2d 495, 505 (3d Cir. 1992) (holding that collateral estoppel bars re-litigation of an issue already decided by final judgment in action involving same parties as long as issue was essential to the prior judgment).

■ With respect to the remainder of the issues raised in the adversary proceeding, we conclude that we lack jurisdiction and therefore should dismiss it. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court *shall* dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added).[5]

■ The jurisdiction of bankruptcy courts is grounded in and limited by statute. *See, e.g., Celotex Corp. v. Edwards,*

---

4. Evidently Guarino tried, without success, to obtain a stipulation from the Defendants to dismiss the adversary proceeding on this ground.

5. Rule 12(h)(3) is made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The bankruptcy court's jurisdiction is based on section 1334(b) of title 28, which grants original but not exclusive jurisdiction, of all civil proceedings (1) "arising under" the Bankruptcy Code, (2) "arising in" a bankruptcy case, and (3) "related to" a bankruptcy case. *See* 28 U.S.C. § 1334(a).

In this instance all the remaining claims for relief in Guarino's Complaint concern an alleged agreement for the sale of the Property which is no longer part of DVI–FS' bankruptcy estate. It is undisputed that Guarino's claims for relief do not fall within the scope of this Court's "arising under" (a cause of action created by title 11) or "arising in" (causes of action that arise only in bankruptcy cases) jurisdiction. Nor can Guarino's claims for relief fall within the scope of this Court's "related to" jurisdiction because they involve only non-debtor parties and property that is not part of the Debtors' estates. *See, e.g., Saul Ewing Remick & Saul v. Provident Sav. Bank,* 190 B.R. 771, 776 (D.Del. 1996) ("[A] court has 'related to' jurisdiction over property only when the property is part of the bankruptcy estate."); *Baker Dev. Corp. v. Mulder (In re Mulder),* 307 B.R. 637, 645 (Bankr.N.D.Ill.2004) ("Disputes between third parties over property that is not part of the estate are not 'related to' the bankruptcy.") (citations omitted).

Because Guarino's remaining claims for relief involve non-core state-law matters relating to non-debtor third parties and property that is not property of the Debtors' estate, we conclude that dismissal of this adversary proceeding for lack of subject matter jurisdiction is appropriate.

## IV. *CONCLUSION*

For the reasons set forth above, we will dismiss the instant adversary proceeding.

An appropriate order is attached.

## ORDER

AND NOW, this **23rd** day of **MAY, 2005,** upon consideration of the Motions to Dismiss filed by the Defendants and the consent thereto by Guarino, it is hereby

**ORDERED** that the above adversary proceeding is **DISMISSED.**